### IN THE

## SUPERIOR COURT OF JUDICATURE.

### FOR THE

## COUNTY OF HILLSBOROUGH, APRIL TERM,

## A. D. 1829.

## PETER HOPKINS *et a. versus* CLARK CROMBIE *et a.*

Where a highway was laid out by selectmen through the land of an individual at his request, it was held, that the highway was legally laid out, notwithstanding it did not appear by the record that there was any application to the selectmen for the purpose in writing, nor any allowance made to the owner of the land for the damage he might thereby sustain.

A building erected within the limits of a highway, cannot be abated by individuals as a nuisance, unless it actually obstruct the passage.

THIS was an action of trespass for breaking and entering the close of the plaintiffs, in New Boston, on the 25th November, 1826, and removing a house frame of the plaintiffs, and filling their cellar with stones, &c.

The defendants pleaded in bar, that on the 30th November, 1813, the selectmen of New Boston, on the application of W. Crombie, laid out a highway in said town, three rods wide, from the bridge near Thomas Mullet's to the bridge near the said W. Crombie's, over land of the said W. Crombie ; that the laying out of said highway was returned to the clerk's office of said New Boston and recorded ; that on 1st July, 1814, said highway was

made and opened as a public highway ; that on the 15th <sup></sup> Hopkins et a.
v.
November, 1826, the plaintiffs dug and stoned up two Crombie et a.
cellars in said highway, and erected a frame of timber
over said cellars, to the great annoyance and obstruction
of the citizens of the state ; that complaint was made of
said annoyance and obstruction to the selectmen of said
town, who requested the plaintiffs to remove the same,
which the plaintiffs refused to do, whereupon the defend-
ants, being the selectmen of said town, and assistants of
the selectmen, on the said 25th November, 1826, entered
and removed the said frame from the said highway, and
filled up the cellar under the same, so far as it was dug
in said highway.

To this plea the plaintiffs replied, *de injuria sua propria
obsque tali causa*, upon which issue was joined.

The cause was tried here at April term, 1828, and a
verdict taken, subject to the opinion of the court upon
the following case.

In the year 1813, the selectmen of New Boston laid
out a highway and made a record thereof as follows :—

" Transcript of a road leading from the bridge north
of Mr. Thomas Mullet's to the bridge by Colonel William
Crombie's viz. beginning at the east end of the old road,
thence running west 14 rods, thence south 56 degrees
west, 14 rods, thence south 36 degrees west, 23 rods, till
it meets the bridge last mentioned. Said roads three rods
wide. New Boston, Nov. 30, 1813.

S. D. }
R. W. } *Selectmen.*"

Said highway was thus laid out through the land of
William Crombie, upon his application, but the applica-
tion was not in writing, and he claimed no damages.
There had been an old travelled way in the same place,
and W. Crombie applied to the selectmen to lay out a
highway where the old road was travelled, in order that
the same might be repaired by the town.

If the centre of the old way is to be considered as the
centre of the highway laid out by the selectmen, the

Hopkins et a.
v.
Crombie et a.

frame and cellar of the plaintiffs extended about ten feet into the highway, but did not cover or obstruct any of the travelled part thereof.

The defendants, supposing that the centre of the old way was the centre of the highway laid out as aforesaid, removed said frame ten feet further from the said centre, and filled up the cellar to that extent, doing as little damage as possible.

And it was agreed, that if the court should be of opinion, upon the foregoing case, that the said highway was not legally laid out, judgment should be rendered in favor of the plaintiffs for $108,33 damage and costs ; but if the court should be of opinion that the highway was legally laid out, but that the defendants had no right to remove the frame, &c. then judgment to be rendered for the plaintiffs for twenty-five cents damage, and such costs as they might by law be entitled to recover, unless the court should be of opinion, that, under the circumstances, the plaintiffs were entitled to an indemnity, in which case judgment to be rendered for $108,33 damage and costs.

*C. H. Atherton,* for the plaintiffs, contended, that, admitting that the frame of the plaintiffs was within the limits of the highway, yet as it did not obstruct the passage, it was not a nuisance, and could not be removed as such by the selectmen, who had no more authority in such a case than any other individuals. Jacob's Law Dictionary, "Nuisance" ; Cro. Car. 184, *James* v. *Hayward* ; 1 Hawkins, B. 1st, chap. 76, sec. 49 and 51 ; 6 East, 430.

He also contended, that the evidence produced did not show a highway legally laid.

In the first place, it did not appear that there was any application in writing to the selectmen to lay out the highway. It did not appear that the owner of the land had notice, or that any damages were awarded to him. 3 N. H. Rep. 335, *Pritchard* v. *Atkinson.* Nor did it ap-

pear from the record, which way from the centre of the old road the three rods were laid, so that there was no certain location of the highway. *Hayes* v. *Shackford,* 3 N. H. Rep. 10.

He also contended, that, admitting the road to have been legally laid out, the defendants could not avail themselves of that fact in mitigation of the damages.

*Sullivan* and *E. Parker*, for the defendant.

RICHARDSON, C. J. delivered the opinion of the court.

Several exceptions have been taken to the record of the doings of the selectmen, in laying out the highway in this case. It is objected, that it does not appear by the record that any application was made to the selectmen to lay out the road ; or that any notice was given to the owner of the land, or that any allowance was made to the owner of the land for the damage he might thereby sustain. We have no doubt, that the most regular course of proceeding by selectmen, under the statute of 1791, was, to require an application in writing, and to state in the record that notice was given to the owner of the land. But the question, whether this was essential to the validity of their doings in ordinary cases, need not be now settled, because here the owner of the land made the application to the selectmen and was willing to dedicate the land to the public use without any compensation.

Had he opened the way described in this record in the year 1813, it would, if used by the public, have now become a public way without any laying out by the selectmen. 2 N. H. Rep. 513, *The State* v. *Campton.* All that was wanting to make the way a public way, was an acceptance of the dedication on behalf of the public. We are of opinion, that the selectmen had legal authority to accept the dedication and that this record is sufficient evidence of such acceptance. It therefore seems to us that none of these exceptions can, under the circumstances of this case, prevail.

*(margin: Hopkins et a. v. Crombie et a.)*

Another objection to the record of the highway is, that it contains no certain description of the limits of the way, because it is not stated which way from the centre of the old road the three rods were laid.

It is believed to be the usual custom in making a record of a highway, to describe a line beginning at a particular monument, and running from that through the whole route to another monument, and then to state the width of the way and to declare the described line to be the centre of the way. But in this case a different method was pursued.

The record does not describe a line, but the course of the road. The end of the old road is described as one of the *termini* and the bridge as the other; and the width is declared to be three rods. This seems to us to fix the limits of the highway with sufficient certainty. It is to begin at the east end of the old road and is to be three rods wide. What is called the east end of the old road is to be the east end of the new highway. This fixes one end of the highway accurately, and by taking a width of three rods there, and running to the bridge in the manner described in the record, the limits of the highway in all its extent are ascertained. We are therefore of opinion that this objection is not well founded in fact.

But it is further contended, on behalf of the plaintiffs, that admitting there was a legal highway, and that the frame of the plaintiffs was an encroachment upon it, yet as the frame did not impede the passage, it could not be treated by the defendants as a nuisance. The question then is, was the frame a nuisance?

It was within the limits of the highway and was clearly an encroachment. But the case states, that it did not cover, nor obstruct any of the travelled part of the road.

There is nothing in the case which shows that the path was in any way impeded, or obstructed, or rendered less safe and convenient by the frame. The real

question then, is, whether every encroachment of this kind must be taken to be, *ipso facto*, a common nuisance? Upon this question we have no doubt.

Hopkins et a.
*v.*
Crombie et a.

The primary object of highways is for the free passage of the public, and any thing which impedes or obstructs that free passage without necessity is a nuisance.

But the owner of the soil of a highway may use it in any way which is not inconsistent with the public convenience, and nothing can be deemed a nuisance which does not, in some way, affect injuriously the free use of the passage. Highways may be lawfully used for other purposes than mere passage. Trees are often left growing, boards, plank, timber, wood, and various instruments of husbandry, are left, and heaps of manure are collected, within the limits of highways. It is believed that these things have never been deemed nuisances, unless they were so situated as to obstruct the passage. The question, whether any thing within the limits of a highway is to be deemed a nuisance is a question of fact to be settled by a jury, and depends upon the enquiry, whether it unnecessarily obstructs the free passage. 2 Starkie, 511, *Rex* v. *Grovenor*; 6 B. & C. 566, *The King* v. *Russel*; 4 Bl. Com. 166. This is most clearly the rule of the common law.

But our statute of February 27, 1786, entitled " an act to prevent encroachments upon highways," declares, that " if any edifice, building or fence, whatever, shall be raised, erected, built or set up, or being erected, shall be continued upon, in or over any such road, highway or alley, contrary hereunto, every such edifice, building or fence, shall be deemed and held to be a common nuisance. And the court, &c. upon indictment and conviction of the offender, are hereby empowered to order and cause such edifices, buildings or fence to be taken down, demolished and removed, and further to punish the offender by fine not exceeding ten pounds and costs of prosecution." This statute was not, in our opinion, intended to make

mere encroachments upon highways where the passage was not obstructed, liable to be removed by individuals. The object was to prevent certain encroachments upon highways, and for this purpose they are declared to be common nuisances, and provision made for their removal and the punishment of the offender. Individuals are permitted to abate actual nuisances which obstruct the passage of highways, because the public convenience requires an immediate remedy, and cannot wait for the slow progress of the ordinary course of justice. But no such reason exists for the interference of individuals in this way, in the case of encroachments which do not obstruct the passage. The statute has not changed the nature of things and made that an actual obstruction which was not so before its enactment. And we think it was not the intention of the legislature, in declaring certain encroachments to be common nuisances, to authorize individuals to remove them of their own authority in cases where they do not amount to actual nuisances.

And on the whole, we are of opinion, that the case does not show that the frame in this case was such a nuisance as rendered it lawful for the defendants to remove, and that the plaintiffs are entitled to judgment.

As to the damages, we have no doubt that the plaintiffs are entitled to recover a sum sufficient to indemnify them for all the real injury they have sustained. But what is the injury? The frame and cellar extended ten feet into the highway. This was clearly an illegal encroachment, which rendered the plaintiffs liable to be indicted and punished, and which might, at any time, upon a conviction, have been legally taken down, demolished and removed. This encroachment the defendants removed, doing no unnecessary damage. The only injury the plaintiffs have sustained is, that they have been unlawfully deprived of an illegal use of the highway—that instead of remaining liable to be prosecuted and punish-

ed, and to have their frame demolished, they have it carefully removed to their own land where it may lawfully stand, and where it ceases to be an encroachment. This is the real nature of the grievance. What is then the damage ? What was the value of the privilege, to these plaintiffs, of having their frame remain illegally in the highway, without this interference of the defendants, rather than on their own land where it was placed, when the selectmen and other inhabitants were determined that the encroachment should not remain ? It is possible, that if these defendants had not removed the frame until the building was finished, it might have been permitted to remain. But it is much more probable, that if the selectmen had not, by mistake, taken the course they did, the plaintiffs would have been indicted and the encroachment thus removed. We think it quite uncertain, whether the plaintiffs have sustained any real damage. They surely could not have wished to finish the building in a situation where it remained liable to be removed as an encroachment. We presume that this suit could not have been brought, had the plaintiffs known that they had placed their frame within the limits of a legal highway. The principal question in this case has been decided against them, and we think they must now be content with merely nominal damages.

*Judgment for the plaintiffs.*