## PECKHAM *vs.* HENDERSON and others.

Where a public highway originally laid cut six rods in width, was fenced only four rods wide, and had been used as thus fenced for thirty years, and there was no evidence that the public had suffered any annoyance or inconvenience from the fences; *Held* that the fences were not a public *nuisance*, which could be abated as such, by the commissioners of highways.

*Held also*, that the commissioners of highways had no right to enter upon the premises of the person through whose land the road was laid out, and remove the fences, so as to make the road six rods wide; without taking the proper measures to ascertain his damages; and this although they claimed to act under and by virtue of a statute, passed long after the opening of the road, by which they were authorized and empowered to make the road six rods wide; but which statute did not provide for any compensation to landowners.

Under such circumstances a landowner cannot be disturbed in his possession without making him just compensation.

Where a simple *encroachment*, not constituting a public *nuisance*, has existed, in a highway, for twenty years, the premises taken by the encroachment cease to be a part of the highway; and the jury should find that there is no encroachment.

Where an act of the legislature appointed commissioners to lay out a road, and required them to file a map and description of the road, in certain offices; and declared that it should be lawful, *from thenceforth*, for the inhabitants of certain counties to cut open and improve the said road; *Held* that the filing of the map was a pre-requisite which must be performed by the commissioners before the inhabitants would have any authority to cut open and improve such road.

MOTION for a new trial, upon a case and exceptions, ordered to be heard in the first instance at a general term. The action was trespass, for breaking and entering the plaintiff's close and removing his fence. The defendants were commissioners of highways of the town of Newfane, in Niagara county, and as such justified under the act of 1852, "to authorize a resurvey of a public highway leading from near the city of Rochester in the county of Monroe, to Lewiston in the county of Niagara, known as the Ridge Road." The facts, and the questions arising thereon, sufficiently appear in the opinion of the court. The judge before whom the cause was tried directed a verdict for the plaintiff.

Peckham *v.* Henderson.

*F. J. Fithian,* for the plaintiff.

*A. Holmes,* for the defendants.

*By the Court,* MARVIN, J. In 1806 the legislature passed an act appointing commissioners to lay out a road through the county of Genesee, from near the falls on Genesee river, to Lewiston on the Niagara river. The commissioners were to explore and lay out the road at least six rods wide. And it was enacted " that when the said road shall be laid out, it shall be the duty of the said commissioners to file a map and precise description thereof, with their names thereto subscribed, in the office of the clerk of the county of Genesee; and that it shall be lawful from thenceforth for the inhabitants of the said county of Genesee to cut open and improve the said road."

At the time this act was passed, the Holland Land Company, so called, owned most of the land through which the road was to be laid. The commissioners surveyed out the road by a single line, and November 5, 1806, filed the survey in the office of the clerk of Genesee county. This survey was some half mile south from the *locus in quo.* The road was so opened that it was used, in 1809, to Lewiston. In 1815 the legislature passed another act, appointing commissioners who were " authorized and empowered to review and make such alterations in the state road leading from the falls on Genesee river to Lewiston, as they in their judgment shall deem beneficial to the public travel. Provided that such alterations shall not materially affect or injure any person settled on said road, or any building or valuable improvement of said road." The commissioners were directed to make a map and file it, with the field notes, in the comptroller's office and in the clerk's office of the counties of Genesee and Niagara, and copies in the towns through which the road should run. " And it shall be lawful from henceforth for the inhabitants of the counties of Genesee and Niagara to improve the said road."

The defendant gave in evidence the field notes of the survey

made by the commissioners under the act of 1815, through the county of Niagara; and it was admitted that this survey was where the road now passes through the plaintiff's farm. No map made by these commissioners was produced.

The plaintiff has title to his farm in fee, including the road, by divers mesne conveyances, from the Holland Land Company. He purchased the farm and entered upon it some 12 or 13 years before the trial. The road, called the Ridge Road, was there, and then fenced on each side as it was at the time the defendants committed the acts complained of. This road was used through the woods as early as 1817, and there were, at that time, no buildings on the road for several miles. The road was only underbrushed out. The fence removed by the defendants was built in 1823. The defendants claimed the right to remove the fence, so as to make the highway six rods wide, under the act of 1852. This act appoints three sets of commissioners, one for each county, Monroe, Orleans and Niagara, to survey and establish so much and such parts of the said highway as is situated within their county, six rods wide, on the route or survey made by the commissioners of 1815. They are allowed to vary the line, and provision is made in certain cases where the line is varied, &c. for compensation to the owner, for damages. The plaintiffs' case, however, does not come within these provisions. The defendants claimed the right to remove the plaintiff's fence so as to make the road six rods wide, and without making him any compensation. It is admitted that the commissioners appointed by the state, and the defendants acting as highway commissioners, have acted regularly, and in accordance with the provisions of the act of 1852. The position of the defendants is that a highway was lawfully laid out six rods wide in 1815; that the public acquired a right to such a road, and that the plaintiff, and those from whom he derived title, have encroached upon the highway ever since 1823; and that such encroachment may now be removed.

Unless the public had such right at the time the statute of

1852 was passed, it is not claimed by the defendants that such statute would justify their acts in the premises, as the statute did not provide for compensation, and none has been made to the plaintiff. Waiving, for the present, all objections as to the laying out of the road by the commissioners, in 1815, and assuming that it was laid out six rods wide, and that compensation was made to the owner, in the enhanced value of his adjoining lands, how will the case be then presented? The public opened the road by underbrushing through the forest so that the road could be used. How wide this opening was does not appear. In 1823 this lot was occupied by a purchaser and the fence in question erected, and it remained so for thirty years. The road was fenced out four rods in width and has been used by the public for over thirty years.

The defendants' counsel says that the fence constituted an encroachment, and he assumes that such encroachment was a public *nuisance*, and then cites authorities to show that the time during which a public nuisance had existed will not constitute a bar to an action or proceeding to abate it. This is so, undoubtedly. A present public nuisance may be abated though it has existed for any length of time. The continuance of a public nuisance is a continual erection of it, and of course statutes of limitation and time have nothing to do with the question. But the nuisance must exist at the time it is sought to be abated. If the thing was a nuisance ten years or five years since, and it has ceased to be such, it cannot be abated as a nuisance. The counsel had *assumed* that the encroachment, so claimed, was a public nuisance—the very point to be established before the principles, relating to the time of its continuance, can be made applicable. What is a nuisance? *Blackstone*, (3 *Com.* 215,) says, " Nuisance, *nocumentum*, or annoyance, signifies any thing that worketh hurt, inconvenience, or damage. And nuisances are of two kinds ; public or common nuisances, which affect the public and are an annoyance to all the king's subjects, for which reason we must refer them to the class of public wrongs, or crimes and misdemeanors ;

and *private* nuisances may be defined any thing done to the hurt or annoyance of the lands, tenements or hereditaments of another." In his 4th volume, page 167, he repeats, that common nuisances are such inconvenient and troublesome offenses as annoy the whole community in general, and not merely some particular person. And of this nature are *annoyances* in *highways*, bridges and public rivers, by rendering the same inconvenient or dangerous to pass, either positively by actual *obstructions*, or negatively by want of reparation. (*See also Bouv. Law Dict. tit. Nuisance;* 1 *Russ. on Crimes,* 317, 347.) Russell says the *annoyance* or neglect must be of a real and substantial nature, (*p.* 318.) And see the precedent of an indictment for obstructing a common highway, (*Arch. Cr. Pl.* 640.)

I have consulted the cases cited by the learned counsel for the defendants for the purpose of establishing his position that no lapse of time will legalize a public nuisance; and they are cases of the *obstruction* of navigation in navigable waters, or of the maintenance of public nuisances injurious to public health, or offensive and annoying. No case is cited of a simple encroachment upon a highway, not amounting to an obstruction, or a real and substantial annoyance to the public. A public nuisance is indictable, and it may be abated by any one. Will it be claimed that in the present case the plaintiff could have been indicted and convicted for maintaining the fence in question? or that any one could justify the act of removing the fence? It seems to me clearly not. Such, however, would be the result if the fence was a public nuisance. Our statute makes a distinction between *obstructing* a highway and *encroaching* upon it, by fences. (1 *R. S.* 521.) Either may be a public nuisance when it is of such a character as to produce *annoyance* of a *real and substantial* nature.

In *Wetmore* v. *Tracy*, (14 *Wend.* 250,) the fence was built in or near the center of a road three rods wide, for the distance of 35 rods. Two thirds of the distance it was in the center of the beaten track, and at one place wagons could not pass.

It was removed by the defendants as a nuisance, and it was clearly so. The common pleas held that the fence was not a public nuisance, but a mere encroachment, to remove which the commissioners of highways should have acted under the provisions of the revised statutes. The supreme court corrected that error, and held that it was a public nuisance, and that the common law right to remove it as such was not affected by the statute. From some of the language of Nelson, J., it might be inferred that he regarded all encroachments upon a highway, as a public nuisance, but the case did not call for the discussion of that question. He gives no definition of a public nuisance. The case was undoubtedly properly decided, but I do not think it an authority for holding that all encroachments, however slight, and without regard to public inconvenience or annoyance, are public nuisances. If the road is encroached upon by fences, to any extent, the commissioners of highways may proceed under the statute, and order the encroachment to be removed.

In my opinion the fence in question was not a public nuisance. The road was fenced out four rods wide, and it had been so used for thirty years. There is no evidence that the public had suffered any *annoyance* or inconvenience. If I am right in supposing that the fence in question was not a public nuisance, what prevented the application, to the case, of the provisions of our statute, Of the time of commencing actions relating to real property ? (2 *R. S.* 292 *et seq.*) The people declare that they will not sue &c. any person for or in respect to any lands &c., by reason of any *right* or title of the people to the same, unless such right or title shall have accrued within 20 years before any suit or other proceeding for the same shall be commenced, &c. unless the rents and profits have been received, &c.

It is entirely clear that the *locus in quo* had been held and possessed *adversely* for 30 years under a fee title, the land being enclosed and cultivated. I confess I am not able to see why the plaintiff had not acquired—assuming that the road

was properly laid out six rods wide in 1815—a right to continue and enjoy his possession as against the public and all the world. It is true that the provisions of the highway act, relating to encroachments, are silent touching the time within which the commissioners are to proceed. But I apprehend that when a simple encroachment, not constituting a public nuisance, has existed 20 years, the premises taken in by the encroachment, cease to be a part of the highway, and the jury should find that there is no encroachment.

There are, however, other objections to the defense interposed. By the act of 1806 the commissioners were required to file a map and precise description of the road, with their names thereto subscribed, in the office of the clerk of the county of Genesee. No map was produced, or proved upon the trial. Small books, purporting to be the field notes or minutes of the survey were produced, from the clerk's office of Genesee county. By the act of 1815, the commissioners were required to cause to be made an accurate map of said road and file it, with the field notes of the survey, in certain offices. The field notes were put in evidence, but no map was produced or proved. The acts of 1806 and 1815 declare, after the provisions just referred to, that it shall be lawful from *thenceforth* for the inhabitants of the county of Genesee (in act of 1806) and Niagara (in 1815) to cut open and improve the said road. Until the commissioners had performed the required prerequisites, the inhabitants had no authority to cut open and improve the road. We have seen what they did, and what the inhabitants did, as they severally took possession of portions of the land through which the road was partially opened. Some of them fenced it out six rods wide and others four rods, and the public have so used it. There is no doubt that the Ridge Road is a highway to the extent it has been used, and the public have an easement to that extent. This position can be maintained upon the principle of dedication. In the present case, the land was fenced out for a road as early as 1823, and it has been used by the public, certainly from that time, with the assent of the

owner.    Other portions of the road have been used since 1809. The rights of the public are limited to the extent of the use. (*The People* v. *Judges of Cortland County*, 24 *Wend.* 491.) The defendants, as commissioners of highways had no right to enter upon the plaintiff's premises and remove the fence without taking the proper measures to ascertain his damages.    In short the plaintiff cannot be disturbed in his possession without just compensation.

The defendants' counsel made the point that the land in question was dedicated to the public use by the Holland Land Company.    I have not overlooked the point, or the evidence upon which it was founded, and content myself by remarking that the point is not well taken.

The motion to set aside the verdict and for a new trial, must be denied with costs.

[GENESEE GENERAL TERM, May 17, 1858.    *Grover, Marvin* and *Davis,* Justices.]

