Harrower *v.* Ritson.

Judgment affirmed.

[Onondaga General Term, October 1, 1861. *Bacon, Allen, Mullin* and *Morgan,* Justices.]

HARROWER and others *vs.* RITSON and others.

A mere encroachment on a public highway, by a fence, will not authorize the removal of the fence by an individual, unless it hinders, impedes or obstructs the use of the road by the public. MORGAN, J. dissented.

An encroachment of a fence upon the highway is not a public nuisance, so as to authorize an individual to abate it, unless it interferes with the use of the road by the public.

His justification will be limited by the necessity of the case; and if the use of the road is not interfered with by the fence, he will be a trespasser, in removing it.

One aggrieved by a private nuisance may have his action, or he may abate the nuisance. A party sustaining a special injury from a public or common nuisance may also have his action, and in the like case he may abate the nuisance.

If there be a nuisance in a public highway, a private individual cannot of his own authority abate it, unless it does him a special injury; and he can only interfere with it so far as is necessary to exercise his right of passing along the highway, doing no unnecessary damage.

If one can, with reasonable care, notwithstanding the act complained of, enjoy the right or franchise belonging to him, he is not at liberty to destroy or interfere with the property of the wrongdoer.

ACTION of trespass, tried before MORGAN, J. and a jury, at the Onondaga circuit. The act complained of was the removal of a fence which the plaintiff had built within

the line of a public highway. There was conflicting evidence whether the fence obstructed or hindered the travel in the road, or interfered with the use of the road by the public. The justice charged the jury that they would determine where the south bounds of the road were as in fact fenced in, and worked as a public road for the twenty years prior to the erection of the fence by the plaintiffs; and if they found that the fence was in the road as thus used, it would constitute a nuisance, which the defendants who traveled the road might remove.

The court was requested to charge, 1. That a mere encroachment on the road by the fence did not authorize the removal of the fence by the defendants, unless it hindered, impeded or obstructed the use of the road by the public; and 2d. That an encroachment of a fence upon the road is not a public nuisance, so as to authorize an individual to abate it, unless it interferes with the use of the road by the public.

These instructions were refused, on the ground that it was not such a case; although there might be cases where persons might interfere with a mere encroachment, and that this amounted to an obstruction if it was within the limits of the highway as actually fenced and used. That the defendants had a right to the full width of the road as fenced and used, although they may have been able to get by the obstruction without any serious inconvenience. The plaintiffs had no right to narrow the road, and if they did put their fence in the road, the defendants could remove it, doing no unnecessary damage. Exceptions were taken, as well to the refusal to charge as to the various legal propositions charged, and the jury found a verdict for the defendants; and from the judgment entered thereon the plaintiffs appealed.

*Sedgwick, Andrews & Kennedy*, for the appellants.

*Noxon & Pulman*, for the respondents.

Harrower *v.* Ritson.

ALLEN, J.   The encroachment of the plaintiffs' fence upon the highway was, it would seem, hardly disputed upon the trial.   The only question of fact upon which conflicting evidence was given was whether the fence was an obstruction to the travel, and interfered with the use of the road by the public.   And upon this branch of the case several witnesses, in behalf of the plaintiffs, testified that the fence torn down did not and could not interfere with the travel west of the angle; and all the testimony was that at the angle and with the fence a single team could easily and safely pass, and that without the fence two teams could not pass.

The fence was undoubtedly, upon the finding of the jury, an encroachment upon the highway, which might have been removed by proceedings under the statute.   (1 *R. S.* 521.) It was also a public nuisance, and indictable as such.   (4 *Bl. Com.* 167.)   And had the plaintiffs been indicted for erecting the nuisance, the charge of the judge would have been strictly accurate.   It would have constituted no defense that travel was not entirely obstructed and hindered.   The public have the right to the entire width of the road—a right of passage in the road to its utmost extent, unobstructed by any impediment.   The plaintiffs could not lawfully by their fence render the passage over the road less convenient or safe than it would have been, but for the encroachment.   (*People* v. *Cunningham*, 1 *Denio*, 524.   *King* v. *Russell*, 6 *East*, 427. Per *Denio*, *Ch. J., Davis* v. *Mayor of New York*, 14 *N. Y. Rep.* 524.)   "Any permanent or habitual obstruction in a public street or highway is an indictable nuisance, although there be room enough left for carriages to pass."   (*See also Rex* v. *Lord Grosvenor*, 2 *Stark.* 511; *Queen* v. *Betts*, 16 *Q. B. Rep.* 1022.)   If every indictable nuisance may be abated by any one, upon his own motion, who chooses to take the law into his own hands, the justification of the defendants was complete, and the court properly refused the instructions asked for, to the effect that an individual was not authorized to abate the nuisance by the removal of the fence,

unless it interfered with the use of the road. The claim is that the erection and maintenance of the nuisance being a misdemeanor, any one may abate it, as it is for the interest of the public that it should not exist. If this is so, it is the only case where, in the absence of any necessity, the vindication and execution of the law are devolved upon the private citizen; and I have found no case that goes this length. The doctrine would tend, manifestly, to breaches of the public peace, and might lead to the oppression of wrongdoers, which should be guarded against. Private nuisances may be abated by the individuals aggrieved by them. (3 *Bl. Com.* 5. 2 *Bouv. Inst.* 574.) And public nuisances should only be subject to abatement by one especially aggrieved by them. Blackstone says: "If a new gate be erected across the public highway, which is a common nuisance, any of the king's subjects passing that way may cut it down and destroy it." The reason assigned is, that the injury requires an immediate remedy. (3 *Black. Com.* 6.) The instance given is that of a total obstruction of the road by the erection of a gate across it, rendering its destruction by the passer by a necessity. Mr. *Broom*, commenting on and explaining this passage from Blackstone, says that to justify a private individual in abating, on his own authority, such a nuisance, it must appear that it does him a special injury; and he can only interfere with it as far as may be necessary to exercise his right of passing along the highway with reasonable convenience, and not because the obstruction happens to be there. (*Broom on Com. Law*, 250.) *The Mayor &c. of Colchester.* v. *Brooks*, (7 *Q. B. Rep.* 339,) was an action on the case for injuring the plaintiff's oyster beds in a river, by improper navigation of the defendant's vessels. The defendant pleaded that that part of the river, before and at the time when, &c., was open to the sea and within the flux and reflux of the tide, and was a public navigable river and the queen's highway for all her subjects with their ships and vessels "to navigate, sail, pass and repass, in, upon, through, over and along

Harrower *v.* Ritson.

the same and all parts thereof, every year and at all times and states of the tide, at their free will," &c. On the trial it appeared that the defendant's vessel, passing up the Colne, a navigable tide river, grounded at a point called the Hound. The tides were in a state called "the dead of the neaps," which made it impossible that for a day or two a vessel of that draught should pass the Hound. The ship grounded on an oyster bed claimed by the plaintiffs as their property, and there did considerable damage. The crew left her, and for want of being properly anchored, she shifted her position when the tide rose, grounded in another place, and did new damage. The jury found that oysters thrown into the mid-channel of the river were a nuisance, and tended to impede the navigation, and that the defendant's vessel grounded where the oysters were so thrown, and that in conducting the vessel there was no neglect as far as the first grounding, but that there was great neglect in leaving the vessel un-moored after she first grounded. The court of queen's bench held that although the oysters were placed in the channel of a public navigable river so as to create a public nuisance, a person navigating was not justified in damaging such property by running his vessel against it, if he had room to pass without so doing; for an individual could not abate a nuisance if he was no otherwise injured by it than as one of the public; and therefore the fact that such property was a nuisance was no excuse for running upon it negligently. Lord Denman, Ch. J. delivered the opinion of the court, and says if there was abundance of room and of water for the vessel to have passed up without going near the alleged nuisance, "however wrongful the act of the plaintiff, yet, as the defendant sustained no special inconvenience thereby, he certainly could not have been justified in willfully infringing upon or destroying the oysters, even for the purpose of abating the nuisance." Again, "In the case of a private nuisance, the individual aggrieved may abate, (3 *Bl. Com.* 5,) so as he commits no riot in doing it; and a public nuisance

becomes a private one to him who is specially and in some particular way incommoded thereby, as in the case of a gate across a highway which prevents a traveler from passing, and which he may therefore throw down; but the ordinary remedy for a public nuisance is itself public, that of indictment; and each individual who is *only* injured as one of the public, can no more proceed to abate than he can bring an action." The same principle was distinctly reaffirmed in *Dimes* v. *Petley*, (15 *Q. B. Rep.* 276,) Lord Campbell, Ch. J. delivering the judgment of the court, in which he says: "Now it is fully established by the recent cases, (citing them,) that if there be a nuisance in a public highway a private individual cannot of his own authority abate it, unless it does him a special injury; and he can only interfere with it as far as is necessary to exercise his right of passing along the highway; and without considering whether he must show that the abatement of the nuisance was absolutely necessary to enable him to pass, we clearly think that he cannot justify doing any damage to the property of the person who has improperly placed the nuisance in the highway, if, avoiding it, he might have have passed on with reasonable convenience." One who is injured by an obstruction placed unlawfully in a highway cannot maintain an action for damages, if it appears he did not use ordinary care by which the obstruction might have been avoided. (*Irwin* v. *Sprigg*, 6 *Gill*, 200. *Smith* v. *Smith*, 2 *Pick.* 621. *Davies* v. *Mann*, 10 *Mees. & Wels.* 545.)

The precise question presented here was considered and decided in *Bateman* v. *Bluck*, (18 *Q. B. Rep.* 870,) which was trespass for entering the plaintiff's close and pulling down a wall therein. Plea that the close was a public pavement within the metropolitan paving act of 57 Geo. III., ch. 29; that the plaintiff unlawfully, and contrary to the act, erected thereon the said wall; and because the wall incumbered the pavement, and the plaintiff refused, on the defendant's request, to remove the same, the defendant entered and pulled

it down. And it was held, on motion for judgment *non obstante veredicto*, that the plea was bad for not showing that it was absolutely necessary for the defendant, in order to exercise the alleged right of passage, to remove the wall. The *locus in quo* was regarded as a highway. (*And see Angell on Highways*, § 274; *Gates* v. *Blancoe*, 2 *Dana*, 158; *Rung* v. *Shoneberger*, 2 *Watts*, 23; *Hopkins* v. *Crombie*, 4 *N. H. Rep*. 520; *Moffatt* v. *Brewer*, 1 *Iowa R*. 348; *Hubbard* v. *Deming*, 21 *Conn. Rep*. 356.) In *Wales* v. *Stetson*, (2 *Mass. Rep*. 143,) the only question propounded to the court in banc was whether the turnpike corporation had a right by law to erect the gate at the place at which it was erected, and if it had not, the plaintiff was to become nonsuit. But within the principle of the cases cited, the gate being adjudged a nuisance, the defendant was justified in removing it, as it was a total obstruction of the road. In *Arundell* v. *McCulloch*, (10 *Mass. Rep*. 70,) the navigation of a navigable river was obstructed by a bridge erected by the plaintiffs, and the bridge was removed by the defendant to facilitate the passage of a vessel belonging to him, built above the bridge, and as little damage was done to the bridge as was possible. The court held the defendant justified; saying, "Here nothing more was done than was necessary to procure a safe passage for the defendant's vessel."

The question has not been directly passed upon by the courts of this state, but general expressions of judges have led to the inference that every common nuisance which was indictable might be abated by any individual; that indictment, and abatement by individual action, were concurrent remedies for all public nuisances. And in *Hart* v. *Mayor of Albany*, (9 *Wend*. 571,) some of the members of the court for the correction of errors were of the opinion that any person might abate a common nuisance, whether he was specially aggrieved by it or not. But it was not necessary to pass upon it, as the defendants had full power to remove all obstructions from the river and harbor, under the city

charter. And the reporter, in the head note to the case, leaves the proposition in this form : "Whether an individual without being specially aggrieved, has a right to abate or remove such nuisance, quære." *Rogers* v. *Rogers* (14 *Wend.* 131) was an action of trespass for wasting ashes belonging to the plaintiff, deposited by him in the highway within 100 feet of the defendant's house. The ashes were so deposited as to be in the way of turning carriages, and rendered the highway less commodious, and were a greater injury to the defendant than to others, and he caused them to be scattered. The plaintiff proved that the ashes did not impede traveling, either on foot or in carriages. And Judge Sutherland was of the opinion, and with him the other justices concurred, that the obstruction of the highway by the deposit of the ashes was not such a nuisance as the defendant had a right of his own mere motion to abate. In *Wetmore* v. *Tracy*, (14 *Wend.* 250,) the only questions were whether the statutory provisions for removing encroachments from public highways had superseded the common law remedies by indictment, and abatement by individual action; and whether in any case any person might remove a common nuisance. And the court held that the common law remedies remained, notwithstanding the statute, which gave a cumulative remedy; and that public nuisances might be abated by the mere act of individuals. But it was not necessary, and the court did not undertake to declare in what cases individual action would be justified. The case was one in which a removal of the fence was clearly justified by necessity. The fence built by the plaintiff was 35 rods in length, and for two-thirds of that distance was in the center of the beaten track, and at one place was so much in the beaten track that wagons could not pass along, and it was difficult even to pass on horseback.

*Renwick* v. *Morris* (3 *Hill*, 621, *affirmed* 7 *id.* 575) was an action of trespass for tearing away a part of the plaintiff's dam over the Harlem river, a navigable stream. The charge to the jury was that if the dam was a public nuisance

the defendant had a right to abate it, and in doing so had a right to remove so much of the dam as was necessary to make a safe and convenient passage for all vessels, at any time of tide, which had been accustomed to navigate the river; but that if he removed more of the dam than was necessary, or did any unnecessary injury to the same, he would be a trespasser *pro tanto.* The jury found a verdict for the defendant, and the judgment of the superior court of New York was affirmed by this court and the court for the correction of errors. The principal questions made and considered were upon the effect of a certain statute, and the age of the dam, which were relied upon by the plaintiff as giving him the right to maintain the dam. And these were the only questions passed upon by the court of last resort. All that was said upon the extent of the right of individuals in the abatement of public nuisances, by Judge Cowen, in delivering the opinion of the supreme court, was this: "And I am aware of no case denying that the remedy by abatement is in all respects concurrent with that by indictment," citing 7 *Cowen,* 558, and 9 *Wend.* 315, a mere passing remark, without deciding any thing; merely indicating the current of thought, rather than giving expression to an authoritative opinion, or deciding a point made in the case. (*And see Peckham* v. *Henderson,* 27 *Barb.* 207.)

If the unqualified right exists, and any person may of his volition and without process of law abate a public nuisance upon the peril only of showing in justification that the property destroyed or removed is a nuisance, and indictable as such, there can be no distinction made as to the kind or character of the nuisance. It may be a particular trade, which is only obnoxious because carried on in a particular place or in a particular manner; it may be something which affects the health, or the air, or renders the enjoyment of property uncomfortable, or depreciates the value of property; or it may be something which tends to a breach of the public peace—a disorderly house, a gaming house, or a hospital,

as well as the obstruction of a navigable river, or a public highway, or the inclosure of a common. To suffer any one, without necessity, to become the executor of this branch of the common law, without the intervention of the ordinary forms of law and a resort to the process of the courts, would tend to gross injustice, breaches of the peace and riots, and the remedy would be worse than the evil to be redressed. But if individual action, in the abatement of nuisances, be restricted and the power qualified and limited as by the English cases, and thus cited from the courts of some of the United States, no serious mischief can arise, and none of which the wrongdoer has a right to complain. An individual aggrieved by a private nuisance may have his action, or he may abate the nuisance. A party sustaining a special injury from a public or common nuisance may also have his action, and in the like case he may abate the nuisance. In the language of Lord Campbell, it becomes to him a private nuisance. He may remove that which interferes with his right, to the extent necessary to the reasonable enjoyment of the right of which the thing interposed would deprive him, doing no unnecessary damage. A party, by erecting a nuisance, does not put himself, or his property, beyond the protection of the law. If an individual or member of the community can with reasonable care, notwithstanding the act complained of, enjoy the right or franchise belonging to him, he is not at liberty to destroy or interfere with the property of the wrongdoer.

In this case, whatever might have been proper had the plaintiffs been on trial upon an indictment for the nuisance, the requests of their counsel were proper, and the instructions should have been given to the jury as asked for. The justification of the defendants was limited by the necessity of the case, and if the use of the road was not interfered with, the defendants were trespassers in removing the fence. The instructions asked were substantially the same as those given in *Renwick* v. *Morris.*

The judgment must be reversed, and a new trial granted; costs to abide the event.

BACON and MULLIN, Justices, concurred.

MORGAN, J. (dissenting.) By the common law, any encroachment or incumbrance upon a highway, by which it is rendered less commodious to the people, is a public nuisance, and may be abated without suit. (1 *Haw. P. C.* 212.) Every portion of the road, as laid out and used, is dedicated to the public and cannot be obstructed so as to interfere with the public travel over such portions, although there may be room to pass on the opposite side. (*Id.* 365. 16 *Vin. Abr. tit. Nuisance, W.*) The same doctrine has been held in this state. (*People* v. *Cunningham*, 1 *Denio*, 524. *Davis* v. *Mayor of New York*, 14 *N. Y. Rep.* 524.) And so in Massachusetts. (2 *Mass. Rep.* 143. 16 *Pick.* 175.) There may be exceptions to this rule, but they have only been allowed in cases where the pretended obstructions were temporary, or the alleged encroachment was beneficial. It is upon this ground that ornamental trees are considered a public benefit, instead of an obstruction. So a public way may be protected by a wall which encroaches upon the side of it. Doubtless, in all these cases of alleged benefit, the question of nuisance or not must be determined by the jury, in view of all the circumstances of the case. But there is no allegation of benefit here, and by the finding of the jury the plaintiffs' fence was placed within the limits of the highway. It is now said that teams could have passed on the other side without difficulty, or at least the jury might have found so by their verdict. But this is not the test. It requires no argument to show that an obstruction to any part of the road is a nuisance, unless it can be justified upon some ground of necessary convenience or supposed advantage.

As no such ground was alleged for placing this fence permanently in the highway, all the authorities concur in pro-

nouncing it a nuisance. There was nothing on which the jury could pass, except the single fact whether the fence was put in the highway. If it was put there without excuse, it was *per se* a nuisance; and no excuse was offered, except the untenable assumption that it did not obstruct the travel to the south of it, for notwithstanding the obstruction in question, it is said sufficient room could have been found to go along the road on the other side. In my opinion the fence was a public nuisance if it was placed in the highway by the plaintiffs without some good reason to justify the act, whether it left room enough for teams to pass it or not. The jury were instructed that if it was within the limits of the road it was a nuisance, which the defendant might remove. It was left for them to say whether it was within these limits.

The case of *Peckham* v. *Henderson* (27 *Barb.* 207) was decided upon other grounds. What the judge said in that case about encroachments was mere *dicta*, and I think not entirely warranted by the authorities cited. The cases where an obstruction may come short of being a public nuisance, were noticed by the judges in the supreme court of errors in Connecticut in *Burnham* v. *Hotchkiss*, (14 *Conn. R.* 311;) and they do not warrant the views of the counsel for the plaintiff in this case; but are entirely consistent with the decision of this court in *Wetmore* v. *Tracy*, (14 *Wend.* 250.)

The judgment should be affirmed.

New trial granted.

[ONONDAGA GENERAL TERM, October 1, 1861. *Bacon, Allen, Mullin* and *Morgan*, Justices.]