Griffith *v.* McCullum.

———•••———

## GRIFFITH *vs.* McCULLUM and VAN SLYKE.

There is, or may be, a wide difference between an encroachment upon a highway by fences, and a public nuisance. Every encroachment is not a nuisance. A nuisance must be something that *annoys* the public.

If the encroachment, by fences, upon the highway, is of such a nature that no one, in using the highway, is incommoded, then it is not a nuisance.

That which is exclusively a common or public nuisance can not lawfully be abated by the private act of individuals. The remedy is, an indictment—a criminal prosecution; unless some other remedy has been provided by statute.

46 561
67h 293
46b 561
9ap 51
46b 561
15ap346

Griffith *v.* McCullum.

A private nuisance may be abated by the party aggrieved.

A nuisance may be a public and a private nuisance. In such a case the public may proceed, by indictment, to abate it, and punish its author, or those individuals to whom it is a private nuisance by reason of its being specially inconvenient and annoying to them, or because they are in some particular way incommoded thereby, may of their own act abate it.

In the case of a private nuisance, the aggrieved party has an election of remedies. He may remove the nuisance, or he may have his action for the private damages sustained by him; but he can not have both remedies.

Unless the encroachment upon a highway, by fences, is such as to constitute a private nuisance, as well as a public nuisance, an individual, even though he be commissioner of highways, is not justifiable in removing the fence.

The remedy is given by the provisions of our highway statutes relating to encroachments; and to that remedy the commissioners should resort, instead of causing the fence to be removed.

ACTION for breaking and entering the close of the plaintiff. Defense, that the *locus in quo* was a public highway, and that the fences removed were an obstruction to the highway, and a public nuisance. The defendant McCullum, was the sole commissioner of highways of the town, (Pike,) and, as such, he caused the fence to be removed. The defendant Van Slyke removed the fence by direction of McCullum.

The evidence proved, or tended to prove, that the fence of the plaintiff was built and stood within the bounds of the highway as laid out and opened. The counsel for the plaintiff requested the court to charge that it was a question of fact for the jury to find whether the fence, erected where it was, was or was not a nuisance; and if it was not, then that the defendants were liable for tearing down and injuring the fence in the manner proved, even though the fence may have been within the bounds of the highway. The court refused so to charge, and the plaintiff excepted. Also, that if the fence, where it was, did not render the highway in any manner dangerous, or inconvenient, or amount to an annoyance of the public, or any part of the public, then the defendants were liable, even though the fence was actually in the highway. Refusal and exception. Also that the court submit

to the jury the question whether the fence was such an annoyance to the public, or any portion of the public, as to make it a nuisance ; and if it was not, then that the defendants were liable, &c. Refusal and exception. Also that if the fence did not in any way discommode any of the public, but rendered the highway better, and more safe for the public than it would be without the fence, then the defendants were liable. Refusal and exception. Also that the defendants had no more right to tear down the fence than they would have had if McCullum had not been a commissioner of highways. Refusal and exception.

The charge was, that if the jury were satisfied that the fence was within the bounds of the highway, the defendants had a right to take it down and remove it, and they were not liable for so doing, unless they unnecessarily and unreasonably injured it in so doing. To this the plaintiff excepted. Also that if the fence was on any part of the highway, any person had a right to take it down and remove it, whether it was any annoyance, or inconvenience, or interruption to the public or any portion of the public, or not. Exception. Also that if the fence was erected in the highway it was a nuisance, as a matter of law, and the defendants had a right to take it down and remove it beyond the limits of the highway, doing no unnecessary injury to the fence. Exception.

*Comstock & Healy,* for the plaintiff.

*L. W. Thayer,* for the defendant.

*By the Court,* MARVIN, J. In my opinion the judge should have charged as requested, and his refusals so to charge were errors. It follows that the charges, as made, relating to the right of the defendants to remove the fence, were erroneous. The learned judge was of the opinion that fences erected within the bounds of the highway are nui-

sances *per se;* thus making all encroachments upon public highways nuisances. This, I think, is erroneous. This precise question was involved in the decision in this district, in *Peckham* v. *Henderson,* (27 *Barb.* 207.) In that case the highway was laid out in 1815, and in 1823 the fences were erected within the bounds of the highway as laid out. The defendants, as commissioners of highways, removed the fences. The position of the counsel was, that the erection of the fence within the bounds of the highway was an encroachment, and he assumed that such encroachment was a public nuisance, which might be abated at any time. It was conceded by the court, in the opinion by MARVIN, J. that a public nuisance might be abated, and that the statutes of limitation had no relation to the question. As to a public nuisance, the question always is, is the thing a nuisance, or was it a nuisance when it was abated or removed? In that case the encroachment was conceded, and I then proceeded to show that such encroachment was not a nuisance *per se.* (*See the opinion on pages* 210, 211, 212, *and the authorities there cited.*) I remain of the opinion I then entertained— that there is, or may be, a wide difference between an encroachment upon a highway by fences, and a public nuisance—that every encroachment is not a nuisance. A nuisance must be something that *annoys* the public. And the instances put, of highways, bridges and rivers, is, that they are rendered inconvenient or dangerous to pass, either positively, by actual obstructions, or negatively, by want of reparation.

If the encroachment, by fences, upon the highway, is of such a nature that no one in using the highway is incommoded, then it is not a nuisance. In the present case it is not necessary to inquire whether the public, or any one, was annoyed, or inconvenienced, by the fence in question, as the learned judge refused to submit any such question to the jury. On the contrary, he held that if the fence was erected

Griffith *v.* McCullum.

within the bounds of the highway it constituted a nuisance, and that the defendants had a right to remove it.

There was evidence showing, or tending to show, that the fence was no obstruction to the use of the highway; that the make of the land was such that the public could not use it where the fence was, and it was claimed that the fence was a protection to the traveler, the road being upon and along a side hill. The learned judge, however, refused to submit to the jury the question whether the fence did not render the highway better, and more safe for the public, than it would be without the fence. In short, the question is fairly presented, whether all encroachments by fences, upon highways, are nuisances; and whether the highway commissioner may of his own motion, without regard to the statutory proceedings, remove such encroachment; and both these propositions are decided in the affirmative.

This court, in this district, has decided against the first of these propositions. As to the second, I was of the opinion that any one might abate a public nuisance, and I so conceded, in *Peckham* v. *Henderson*, without examining the question. Indeed, in the view taken in that case, the question was of no importance. In examining this case I have read the opinion of the court, by Allen, J. in *Harrower* v. *Ritson*, (37 *Barb.* 301,) and am prepared to concur with him and his brethren, Bacon and Mullin. It is there held that a mere encroachment upon a highway, by a fence, will not authorize the removal of the fence by an individual, unless it hinders, impedes or obstructs the use of the road by the public; that such encroachment is not a public nuisance, so as to authorize an individual to abate it, unless it interferes with the use of the road by the public; that the justification of one removing the fence will be limited by the necessity of the case, and if the use of the road is not interfered with by the fence, he will be a trespasser in removing it.

Justice Allen examines the cases in this state, and shows that it is not established that every common indictable nui-

sance may be abated by any individual, though general expressions used by judges have led to the inference that such was the law. He shows very clearly from English cases that such is not the law. In a recent case, (*Dimes* v. *Pently*, 15 *Q. B. Rep.* 274,) Lord Campbell says: "Now it is fully established by the recent cases, that if there be a nuisance in a public highway a private individual can not, of his own authority, abate it, unless it does him a special injury; and he can only interfere with it as far as necessary to exercise his right of passing along the highway; and without considering whether he must show that the abatement of the nuisance was absolutely necessary to enable him to pass, we clearly think that he can not justify doing any damage to the property of the person who has improperly placed the nuisance in the highway, if, avoiding it, he might have passed on with reasonable convenience."

The same doctrine is reiterated in *Bateman* v. *Bluck*, (18 *Q. B.* 870.) In *The Mayor &c. of Colchester* v. *Brooke*, (7 *Q. B.* 339,) Lord Denman, Ch. J. said: "It is very important, for the sake of the public peace, and to prevent oppression, even on wrongdoers, not to confound common with private nuisances, in this respect. In the case of the latter, the individual *aggrieved* may abate, (3 *Bl. Com.* 5,) so as he commits no riot in doing it; and a public nuisance becomes a *private* one to him who is specially, and in some particular way inconvenienced thereby, as in the case of a gate across a highway, which prevents a traveler from passing, and which he may therefore throw down; but the ordinary remedy for a private nuisance is itself public, that of indictment; and each individual, who is only injured as one of the public, can no more proceed to abate than he can bring an action."

The distinction between public and private nuisances is here clearly stated, and individuals are only justifiable in abating those by which they are specially aggrieved, or in some particular way incommoded. The distinction and doctrine are established from the ancient cases. Blackstone is

cited. This author, in his chapter "Of the redress of private wrongs by the mere act of the parties," (*vol.* 3, *p.* 5,) specifies nuisances, and without, in that place, stopping to define, particularly, what a nuisance is, but referring the reader to a subsequent chapter, observes that whatever unlawfully annoys or doth damage to another is a nuisance; and then adds: "Such nuisance may be abated, that is, taken away, or removed, by the party aggrieved thereby, so as he commits no riot in the doing of it." It is, I think, from this general language that an impression has been produced that individuals may, upon their own volition, abate any and all nuisances, and that judges have sometimes so said or intimated, in a general way. Blackstone, when understood, has inculcated no such doctrine. The party abating must have been *aggrieved* thereby; and the author gives instances in illustration of the text, as, the erection of a house that stops ancient lights, which he says is a *private* nuisance. Or a new gate erected across a public highway, which is a common nuisance, and any of the king's subjects passing that way may cut it down and destroy it. And he adds: "The reason why the law allows this private and summary method of doing one's self justice is because injuries of that kind, which obstruct and annoy—such things as are of daily occurrence and use—require an immediate remedy; and can not wait for the slow progress of the ordinary forms of justice." Here we have the case put of the total obstruction of a public highway, creating a nuisance common to all, and also private and peculiar to all individuals having occasion to pass that way. Hence it is a private injury, and the private individual aggrieved may abate it. He can not wait the slow progress of the ordinary forms of justice. See *Broom's* comment on this case of the gate; as stated in the opinion of Allen, J. in *Harrower* v. *Ritson,* (*supra;*) and see, also, Chitty's note to this part of Blackstone, and the cases he cites. The abatement by an individual must be limited by its necessity, and no wanton or unnecessary injury must be

committed. (2 *Salk.* 458.) Let us now turn to Black-stone's chapter "Of nuisances," (*Vol.* 3, *p.* 215.) He is here speaking of injuries to be remedied by action. He tells us that nuisance, *nocumentum*, or annoyance, signifies any thing that worketh hurt, inconvenience or damage. They are of two kinds, public or private. The former affect the public, and are an annoyance to *all* the king's subjects; and for this reason they are referred to the class of public wrongs, or crimes and misdemeanors. After stating at large what are private nuisances, the author proceeds to the remedy, viz. an action. He says the law gives no *private* remedy for any thing but a *private* wrong; that no action lies for a public or common nuisance, but an indictment only, because, the damage being common to all the king's subjects, no one can assign his particular proportion of it; or, if he could, it would be extremely hard if every subject of the kingdom were allowed to harrass the offender with separate actions. For this reason, no person, natural or corporate, can have an action for a public nuisance, or punish it; but only by the king in his public capacity of supreme governor and *pater familias* of the kingdom. He adds: "yet this rule ad-mits of an exception; when a private person suffers some extraordinary damage, beyond the rest of the king's subjects, by a public nuisance; in which case he shall have a private satisfaction by action." He puts the case of an injury to one's horse falling into a ditch which is a public nuisance. He adds: "If a man hath abated, or removed a nuisance which offended him, (as we may remember it was stated in the first chapter of this work that the party injured hath a right to do,) in this case he is entitled to no action. For he had choice of two remedies, either without suit, by abating it himself by his own mere act and authority; or by suit, in which he may both recover damages, and remove it by the aid of the law; but having made his election of one remedy, he is totally precluded from the other." Let us now turn to vol. 4, p. 167, where nuisances are treated of as public

Griffith *v.* McCullum.

wrongs, and the author says : " Common nuisances are such inconvenient or troublesome offences as annoy the whole community in general, and not merely some particular persons ; and therefore are indictable only, and not abatable ; as it would be unreasonable to multiply suits by giving every man a separate right of action for what damnifies him only in common with the rest of his fellow subjects. Of this nature are, 1. Annoyances in highways, bridges and public rivers, by rendering the same inconvenient or dangerous to pass ; either positively, by actual obstruction, or negatively, by want of reparations." The ancient authorities are fully collected in *Jacob's Law Dictionary, title Nuisances.*

Having ascertained what constitutes a nuisance, public or private, and having also considered the remedies, it seems clear to my mind,

1. That every encroachment upon a highway is not a nuisance ; and that our highway statutes give a remedy touching encroachments, much broader than the common law remedies by indictment for a nuisance.

2. That that which is exclusively a common or public nuisance can not lawfully be abated by the private act of individuals. The remedy is an indictment — a criminal prosecution ; unless some other remedy has been provided by statute, as is the case in some of our city and village acts of incorporation.

3. A private nuisance may be abated by the party aggrieved.

4. A nuisance may be a public and a private nuisance. In such a case the public may proceed, by indictment, to abate it, and punish its author ; or those individuals to whom it is a private nuisance, by reason of its being especially inconvenient and annoying to them, or that they are in some particular way incommoded thereby, may of their own act abate it.

5. In the case of a private nuisance, the aggrieved party has an election of remedies. He may remove the nui-

'sance, or he may have his action for the private damages sustained by him. He can not have both remedies.

As the learned judge held in this case that every encroachment upon a highway is a nuisance, in my opinion he erred. If the evidence had tended to prove facts which constitute a nuisance, and the question of nuisance had been material, in the case, it should have been submitted to the jury. Unless the encroachment was such as to constitute a private as well as a public nuisance, the defendants were not justifiable in removing the fence. The remedy is given by the provisions of our highway statutes relating to encroachments, and the commissioners should have resorted to this remedy. It would be an extremely alarming doctrine that all persons who are, by their fences, encroaching upon the highways are liable to have those fences thrown down, at any time, by the commissioners of highways or other persons. I have endeavored to show that there is no authority for this in the common law; and if not, then the remedy is by statutes which are quite ample to protect the public.

The judgment should be reversed, and there should be a new trial, costs to abide the event.

[ERIE GENERAL TERM, May 7, 1866. *Grover, Marvin* and *Daniels,* Justices.]