Brown v. De Groff.

## BENJAMIN BROWN ET AL., PLAINTIFFS IN ERROR, v. WILLIAM DE GROFF, DEFENDANT IN ERROR.

1. The plaintiff below planted his oysters upon natural clam beds in Raritan bay. In fishing for clams the defendants injured the plaintiff's oysters.—*Held*, that it will constitute a complete defence to a suit for this injury, if the defendants can show that they went upon the natural clam beds in good faith for the purpose of taking clams, and that in the exercise of that privilege they acted with reasonable care and did no unnecessary damage to the plaintiff's property.
2. It is a right common to all the citizens of this state to take shell-fish from natural beds in the tide-waters of this state, and may be enjoyed by them at will, except so far as it is restrained by positive law, or by grants from the state to individuals.
3. The individual citizen may not lawfully abate every public nuisance; his right to abate arises only when the nuisance becomes an obstruction to the exercise of his private right. It then becomes as to him a private nuisance.

In error.

For the plaintiffs in error, *McDermott & Throckmorton* and *W. T. Hoffman.*

For the defendant in error, *E. W. Arrowsmith* and *R. V. Lindabury.*

The opinion of the court was delivered by

VAN SYCKEL, J.   De Groff, the defendant in error, who was plaintiff below, before the alleged tort was committed, had planted oysters in Raritan bay, beyond low-water mark. The evidence shows that the grounds upon which these oys-

ters were planted were natural clam beds.   In April, 1886,
the plaintiffs in error, in pursuit of their occupation, went
upon these grounds to fish for clams, and in doing so brought
up with their rakes some of the planted oysters.   The oys-
ters were not appropriated by the fishermen to their own use,
but were returned by them to the water, and were subse-
quently found to be dead.   This suit was brought for the
disturbance of and injury to the oysters, and judgment was
recovered for damages by the plaintiff in the court below.
The fishermen insisted that the plaintiffs' oysters were planted
on natural clamming ground; that the presence of the oys-
ters on such ground did not deprive them of their right to
take clams there, and that if in taking clams they did no un-
necessary and avoidable injury to the oysters, they could not
be held liable for the injury done to De Groff.

The trial court rejected this view of the law, and instructed
the jury in substance that even if the plaintiffs' oysters were
upon natural clamming grounds, so as to amount to a public
nuisance, still the defendants had no right to interfere with or
injure them, for the reason that a private person had no right
to abate a nuisance which is purely public.

The error assigned challenges the correctness of this
charge.

The right to take shell-fish below high-water mark, from
natural beds in the tide-waters of this state, is a part of the
public right of fishery, which has been fully recognized, and
cannot now be contraverted.

It is a right common to all the citizens of the state, which
may be exercised by them at will, except so far as it is re-
strained by positive law, or by grants from the state to indi-
viduals.

In *Paul* v. *Hazleton*, 8 *Vroom* 106, and *Wooley* v. *Camp-
bell*, 8 *Vroom* 163, the cases upon which the doctrine rests are
cited and discussed.

The defendants below had an undoubted right to go upon
these natural beds to take clams, and could not be deprived
of that right by the unauthorized attempt of De Groff to ap-

propriate the bed of the waters to his own private use. The planting of these oysters constituted a public nuisance, and unless it could be abated by the defendants so far as was necessary to enable them to enjoy their right of fishing, that right will be subordinated to and swept away by a claim which has its foundation in a trespass upon the public domain.

Loose expressions have crept into some of the decisions upon the subject of abating nuisances, to the effect that a public nuisance may be abated by any one.

No authority for so broad a statement can be found in the law of England or of this country. No one has a right to abate a purely public nuisance.

Where the common law prevails I think search will be made in vain for a well-considered case which would justify a private person in abating a disorderly house, or a gaming house, or a house where liquor is habitually sold contrary to law. The cases on this subject are collected in the twenty-first chapter of *Wood on Nuisances.* The individual citizen may not lawfully abate every public nuisance; his right to abate arises only when the nuisance becomes an obstruction to the exercise of his private right. It makes no difference that the right is one which all other citizens may enjoy in common with himself; otherwise the traveler on the public highway could not remove the barrier which hindered his further progress.

The rule is well stated by Chief Justice Shaw, in *Brown v. Perkins*, 12 *Gray* 100 : "The true theory of abatement of nuisances is that an individual citizen may abate a private nuisance injurious to him when he could also bring an action; and also when a common nuisance obstructs his individual right, he may remove it to enable him to enjoy that right, and he cannot be called in question for so doing." This case was cited an approved, in *Miller* v. *Forman*, 8 *Vroom* 55.

*Mayor of Colchester* v. *Brooke*, 7 *Q. B.* 339, is relied upon to support the judgment below. In that case the plaintiff's oyster bed was injured by the negligence of the defendant in navigating his vessel over it, and upon that ground the right

to maintain the action is rested. If there had been an absence of negligence, the defendant's right to pass over the waters of the river with his vessel would have presented a complete defence to the action. If a carriage is left in a highway, so as to constitute a public nuisance, an injury unnecessarily done to it by the carelessness of one in driving along the public way would be actionable, but if the injury is unavoidably done in the reasonable use of the right of passage, there could be no recovery.

The cases of *Dimes* v. *Petley*, 15 *Q. B.* 274, and *Bateman* v. *Bluck*, 18 *Q. B.* 870, go only to the extent of maintaining what I conceive to be the law, that a private individual may not lawfully abate a public nuisance, with no purpose or object other than to have it removed. It is in this view of the law that the Supreme Court of New York, in *Harrower* v. *Ritson*, 37 *Barb*. 301, and in *Griffith* v. *McCollum*, 46 *Barb*. 561, held that every encroachment by fencing upon a public road is not a public nuisance, *per se*, so as to authorize an individual to abate it, unless it interferes with the use of the road by the public; that the justification of one removing the fence will be limited by the necessity of the case, and if the use of the road is not interfered with by the fence, he will be a trespasser in removing it. Whether the rule is too broadly stated in these cases, it is not necessary to determine.

If, in the case under review, the plaintiffs in error had gone upon the bay merely to abate the public nuisance created by the planted oysters, and not to exercise their legal right of taking clams, the English cases which have been cited would be applicable in denial of their immunity from liability. The private citizen may not, in such case, volunteer, in behalf of the public, to remove that which is an invasion of the public right, and thus summarily punish the offender.

It is not until the public nuisance becomes, as to him, a private one, by interfering with and causing a deprivation of the enjoyment of his private rights, that he can put it aside without appealing for relief to the legal tribunals.

When the injury thus becomes a private one, he may abate

it, and need not wait for the slower process of removal by an appeal to the law.

It was competent, therefore, for the defendants below to show in their defence, as a complete justification, that they went upon the clam beds in good faith, for the purpose of taking clams, and that in the exercise of that privilege they acted with reasonable care, and did no unnecessary damage to the plaintiff's property. They had a right to go upon all parts of the natural clam beds, and remove the clams there found, and in that right they could not be restricted by the unlawful act of the plaintiff. The argument of the plaintiff below is that every one has a right to travel on every part of the public road, but that one cannot, for that reason, drive against a carriage which is left as a nuisance in the highway, if he can, with reasonable care, by using another part of the roadway, avoid it, and that applying this rule, the fishermen were under a duty to take clams on the part of the natural beds not covered by the planted oysters.

The cases would be parallel if the fishermen had unnecessarily done the injury in merely travelling over the water-way.

If the traveller, in the public highway, found it necessary, in the pursuit of property, which he might lawfully take and remove, to drive where the carriage was unlawfully left, he would not be responsible for damage unavoidably done.

If it could be shown to the satisfaction of the jury, that the fishermen, under mere pretence of pursuing their vocation, had availed themselves of the opportunity to destroy the plaintiff's property, the law would charge them with a willful trespass, and compel them to make restitution.

*Clark* v. *Ice Company*, 24 Mich. 509, and *State* v. *Keeran*, 5 *R. I.* 510, fully recognize the doctrine that all willful or unnecessary injury to wrong-doers, or to their property, is itself a wrong, and that no man can set up a public or a private wrong committed by another as an excuse for an unnecessary injury to him or his property.

The judgment below should be reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, DEPUE, DIXON, KNAPP, MAGIE, REED, VAN SYCKEL, BROWN, CLEMENT, COLE, McGREGOR, WHITAKER.    13.