SMITH supervisor of North Hempstead *against* LEVINUS.

The act of the legislature vesting certain legislative powers in boards of supervisors (*Laws of* 1849, Ch. 194,) by which it authorizes them to make laws for the protection of shell and other fish, in the waters of their counties is constitutional. It was not necessary to limit the penalties; the boards of supervisors should provide for the violation of the laws they should enact.

In an action brought by a supervisor, it is sufficient that in the title of the complaint he is described with his official designation, and that in the body of the complaint he refers to it and alleges that he complains "as supervisor as aforesaid."

The ownership of the people of state to the bed of navigable waters is not as joint tenants, but as the sovereign, and for the common benefit and enjoyment. It is only to promote the common benefit and enjoyment that it can authorize the erection of wharves thereon by individuals. *Semble.*

The questions in this action arose upon a demurrer to the complaint. It was entitled "Silvanus S. Smith, supervisor of the town of North Hempsted, against Joshua Levinus," and was commenced in these words: "The complaint of the plaintiff above named as supervisor as aforesaid shows, &c." It then alleged that the board of supervisors of Queens county had passed an act to provide for shell fish within the waters of that county, a copy of which was annexed to the complaint, prohibiting dredging the public waters of the county for oysters, and that the defendant had violated the law by dredging for oysters in Cow Bay and thereby incurred the penalty of one hundred dollars to the plaintiff. The act in question was passed September 12, 1850, and the portions of it under which the penalty was claimed were as follows:

"Sec. 4.— No person whatever shall take oysters from any of the public waters in the said county of Queens, by means of the process called or known as dredging, under the penalty of one hundred dollars for each offense." * * *

"Sec. 6.— The supervisor of each town, respectively, is

hereby authorized to prosecute and defend any suit which may be commenced under any of the foregoing sections, on appeal or otherwise, to a final judgment and decision.''

The grounds of demurrer, were, among others, that the act of the legislature under which the powers of legislation were vested in the boards of supervisors, (*Laws of* 1849, *ch.* 194, § 4,) was void, as the constitution authorizes the legislature to confer upon boards of supervisors powers only of " *local* legislation and administration;" whereas, the power conferred by the act is general and gives unlimited discretion to the supervisors in affixing the punishment for its violation; and also that legislation in relation to the taking of oysters is not of a local character.

The demurrer was overruled at a special term of the supreme court, held by Mr. Justice BROWN, in November, 1851, and the judgment then entered was affirmed at a general term in the second judicial district. The defendant appealed. The cause was submitted upon written arguments by

*R. H. Coles,* for appellant, and

*W. S. Smith,* for respondent.

MORSE, J., delivered the opinion of the court. The people in their sovereign corporate capacity own the beds of all navigable waters within the state. They are held for the common benefit, and to promote the convenience and enjoyment of all the citizens, and not in the manner the capitol and public buildings are owned. Thus it is not to be supposed possible that this ownership can be exercised so as to operate injuriously upon private rights, as by authorizing A to erect a wharf in the front of the lands of B lying upon navigable waters, and thus prevent his access to them. One of the purposes for which the people own the beds of such waters is to protect and regu-

SEL. IV.—60

late the rights of fishing in them. The legislature may make such laws for this purpose as it deems most beneficial to the common enjoyment of the right, in the same manner that it may for the public convenience authorize wharves to be erected upon navigable waters. So it doubtless may for commercial purposes authorize the filling up a part of the bed of a stream or cove which furnished a desirable fishing place. All these powers are within the scope of legislation. The constitution vests the whole legislative power of the state in the senate and assembly. (*Art.* 3, § 1.) It also authorizes them to confer upon boards of supervisors " such further powers of local legislation and administration as they shall from time to time prescribe." (*Id.* § 17.) The constitution had expressly conferred upon boards of supervisors certain limited legislative powers,(*Id.* § 5,) and this provision was obviously meant to authorize the vesting them with other powers in relation to local matters. By the act of April 3, 1849, (*Laws of* 1849, *ch.* 194, § 4 *sub.* 13,) the legislature gave authority to boards of supervisors to make laws and regulations " to provide for * * * the protection of shell and other fish within the waters of their respective counties." Under this authority, the supervisors of Queens county passed the law in question, imposing a penalty of fifty dollars for each offence against it, to be sued for and recovered, " in the name of the supervisor of the town in which the offence shall have been committed."

It is objected in the demurrer, that the plaintiff had not legal capacity to sue, and in the points, that he does not allege that he is supervisor of the town of North Hempstead. It is a sufficient answer, that he describes himself in the title of the complaint as supervisor of North Hempstead, and then commences it by saying, " The complaint of the plaintiff above named as supervisor as aforesaid shows, &c." This is a very plain statement of the capacity in which he sues, and would not mislead any person of common understanding.

Smith *against* Levinus.

It is insisted by the defendant that the complaint does not state whether the oysters taken were dredged from their natural bed, or were deposited there by the defendant. This can not be material. The legislature has an undoubted right to regulate the oyster fisheries upon navigable waters, whether the oysters grew there naturally or were planted upon the land belonging to the state lying under water. Indeed, the use of these lands by individuals for their exclusive private benefit, could only be permitted on the ground of its public utility. But a conclusive answer is, that if the oysters were the private property of the defendant he should plead it. The natural and legal presumption is, that oysters in the bed of navigable waters grew there, and belong to those who first reduce them to possession. The law of the board of supervisors was simply intended to regulate the manner of taking them. It can not be objectionable in that view of the subject.

The next objection is, that the act of 1849 does not prescribe and limit the powers of the boards of supervisors, but expressly leaves the powers incident to their legislation unlimited in relation to the particular subjects embraced in them. It is said that they may provide extreme and cruel penalties for the violation of their laws. It is a sufficient answer to the suggestion, that the people have found it both safe and expedient to give a pretty large discretion to the legislature, relying confidently upon the fact that the officers the people select to make their laws will possess some prudence, have some sense of the right, and be guided in some degree by their consciences in discharging their duties.

Again; it is said that the legislation was not local: that oysters were not local, and thus not the subjects of local legislation. Oysters are not very migratory; and Cow Bay is local; and to make a law to regulate the fishing for oysters in Cow Bay, is to legislate for a locality. It is local legislation. It is of no consequence whether the people of the state own the oysters in that locality or not

If they do, they have a right to preserve them. It was insisted that the people held the lands under water in Cow Bay as tenants in common. This is clearly a mistake. It belongs to the sovereignty. I see no reason why the judgment of the supreme court should not be affirmed.

GARDINER, J., gave no opinion.

All the other judges concurring,

Judgment affirmed.