GEORGE W. LAWTON et al., Appellants, *v.* WILLIAM N. STEELE, Respondent.

The state legislature has power to declare places or property used to the detriment of public interests or the injury of the health, morals or welfare of the community, public nuisances, although not such at common law.

*It seems,* however, this power may not be used as a cover for withdrawing property from the protection of the law, or, arbitrarily, where no public right or interest is involved in declaring property a nuisance for the purpose of devoting it to destruction, and if the court can judicially see that the statute is a mere evasion or was framed for the purpose of individual oppression, it may be set aside as unconstitutional.

The legislature has power to regulate and control the right of fishing in the public waters of the state, and in the exercise of this power may prohibit the taking of fish with nets in specified waters, and by its declaration, make the setting of nets for that purpose a public nuisance.

Where a public nuisance consists in the location or use of tangible personal property, so as to interfere with or obstruct a public right or regulation,

the legislature may authorize its summary abatement by executive agencies without resorting to judicial proceedings; and any injury to or destruction of the property necessarily incident to the exercise of the summary jurisdiction, interferes with no legal right of the owner, and is not violative of the constitutional prohibition against depriving the owner of his property without due process of law.

The legislature, however, may not decree the destruction or forfeiture of property used so as to constitute a nuisance, and appoint officers to exe-·cute its mandate as a punishment of the wrong or even to prevent a future illegal use of the property, it not being a nuisance *per se.*

*It seems* a public nuisance may only be abated by an individual where it obstructs his private rights, or interferes at the time with his enjoyment of a right common to many, and he thereby sustains a special injury.

Where provisions of a statute are separate and one is unconstitutional, while the others are valid, the latter will be sustained and the former only rejected.

Accordingly, *held,* that the provision of the act of 1883 (§ 2, Laws of 1883, chap. 317), declaring "any net found  *  *  *  *  in or upon any of the waters of this state, or upon the shores or islands in any waters in this state, in violation of any existing or hereafter enacted statutes or laws for the protection of fish," to be a nuisance, authorizing its summary abatement and destruction by any person, and making it the duty of every fish protector and constable "to seize and remove and forthwith destroy the same," so far as it authorizes the destruction, by a fish protector or constable, of nets found in actual use in the waters of the state, was constitutional; and that its constitutionality was not affected by the authorization also given to private individuals and officers to destroy nets on land.

Black River bay is part of Lake Ontario, within the meaning of the act of 1886 (Chap. 141, Laws of 1886), prohibiting the killing or taking of fish by nets in certain portions of said lake.

(Argued December 19, 1889; decided February 25, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order made February 12, 1889, which reversed a judgment in favor of plaintiffs entered upon a verdict, and ordered a new trial.

This action was brought to recover the value of sixteen hoop or fike nets belonging to plaintiffs, which were destroyed by defendant; twelve of the nets were found by defendant set in the waters of Black River bay, an inlet of Lake Ontario, for the purpose of catching fish, the four others were on shore. Defendant was a state fish and game protector and justified

as such ; the provision of the statute under which he justified is set forth in the opinion.

*E. C. Emerson* for appellant. The appeal properly lies from the decision of the General Term reversing the plaintiff's judgment and ordering a new trial. (Code, § 191, subd. 3 ; *Zoeller* v. *Riley*, 1 How. Pr. [N. S.] 525 ; 98 N. Y. 669 ; *Byrnes* v. *City of Cohoes*, 67 id. 294 ; Code, §§ 1318, 1346, 1347 ; *Wright* v. *Hunter*, 46 N. Y. 410, 412 ; *Pharis* v. *Gere*, 107 id. 231, 235 ; *Dickson* v. *B. & S. A. R. R. Co.*, 47 id. 507, 509 ; *Harris* v. *Burdett*, 73 id. 136, 139 ; *Suebley* v. *Conner*, 78 id. 218 ; *Mack* v. *R. G. Ins. Co.*, 106 id. 560 ; *Case* v. *Dexter*, Id. 548–555 ; *Kiley* v. *W. U. T. Co.*, 109 id. 231, 238.) Chapter 591, Laws of 1880, as amended by chapter 317, Laws of 1883, so far as it provides for the summary seizure and destruction of fishing nets, is unconstitutional. (Laws of 1880, § 1, chap. 591 ; Laws of 1883, chap. 317 ; U. S. Const. 5th and 14th Amend. § 1 ; N. Y. Const. art. 1, § 6 ; *Stewart* v. *Palmer*, 74 N. Y. 184, 191 ; *In re McPherson*, 104 id. 306, 321 ; *People* v. *Supervisors*, 70 id. 229 ; *Taylor* v. *Porter*, 4 Hill, 140 ; *Rockwell* v. *Nearing*, 35 N. Y. 302 ; *Campbell* v. *Evans*, 45 id. 358 ; *In re Cheesebrough*, 78 id. 233, 237, 238 ; *In re Jacobs*, 98 id. 98, 108 ; *People* v. *Gillson*, 109 id. 389, 400 ; 3 Blackst. Comm. 216 ; *Coe* v. *Schultz*, 47 Barb. 64, 67 ; Wood on Nuisance, § 1 ; *Wynehamer* v. *People*, 13 N. Y. 378, 393, 416, 454 ; *Willis* v. *Warren*, 1 Hill, 590, 594 ; *Village of Des Plaines* v. *Poyer*, 14 N. E. Rep. 677 ; *Brown* v. *Perkins*, 12 Gray, 89 ; *Salter* v. *Van Dervcer*, 47 Hun, 366 ; 3 Blackst. Comm. 5216 ; 2 Br. & Had. Comm. [Wait's ed.] 219 ; 4 Wait's A. & D. 726 ; Penal Code, § 385 ; *Russell* v. *Mayor, etc.*, 2 Den. 461, 473, 474 ; *Welch* v. *Stowell*, 2 Doug. [Mich.] 332, 341 ; Wood on Nuisances [2d. ed.], §§ 33, 738 ; *Harrower* v. *Ritson*, 37 Barb. 301, 304, 310 ; *Rex* v. *Pappineau*, 2 Strainge, 688 ; 2 Salk. 458 ; *C. B. Co.* v. *Paige*, 83 N. Y. 178, 188, 189 ; 1 Hilliard on Torts [3d ed.] 577, § 18*a ; Barclay* v. *Comrs.*, 25 Penn. St. 503, 505 ; *Ely* v. *Super.*, 36 N. Y. 297 ; *Fisher* v. *McGirr*, 1 Gray, 1 ; *Larson*

v. *Furlong,* 50 Wis. 681; *Miller* v. *Snover,* 42 N. J. L. 341.) Aside from the statute under consideration, the defendant had no right to remove and destroy the nets as being a purpresture or nuisance. (*Brookhaven* v. *Strong,* 60 N. Y. 56; Wood on Nuisances [2d. ed.], §§ 77, 84, 480, 732, 733, 740; *Griffiths* v. *McCullum,* 46 Barb. 561; *F. P. B. Co.* v. *Smith,* 30 N. Y. 44; *Harrower* v. *Ritson,* 37 Barb. 301; *Rogers* v. *Rogers,* 14 Wend. 131; *Lansing* v. *Smith,* 8 Cow. 146, 151; *Goldsmith* v. *Jones,* 43 How. Pr. 415; *Grant* v. *Mouk,* 26 Hun, 380; *Mayor, etc.,* v. *Brooks,* L. R. [7 Q. B.] 339; *Dinus* v. *Petley,* L. R. [15 id.] 276; *Brown* v. *Perkins,* 12 Gray, 89; *Cobb* v. *Bennett,* 75 Penn. St. 326; *Francis* v. *Schwellkopf,* 53 N. Y. 152, 155; *Doolittle* v. *Suprs.,* 18 id. 160; *Moody* v. *Suprs.,* 46 Barb. 660, 666; *Taggart* v. *Comrs.,* 21 Penn. St. 527; *Greensdale* v. *Holliday,* 6 Bing. 379.) Upon the facts of this case the plaintiffs were entitled to recover the value of the property destroyed. (1 Hilliard on Torts [3d. ed.], 154, 155, 159, 164, 165 [chap. 4, §§ 20, 21, 26]; *Welch* v. *Wesson,* 6 Gray, 505; *Nodine* v. *Doherty,* 46 Barb. 59, 60; *Berthoff* v. *O'Reilly,* 8 Hun, 16, 18; *Ely* v. *Suprs.,* 36 N. Y. 297, 300; *Larson* v. *Furlong,* 50 Wis. 690; *Harrower* v. *Ritson,* 37 Barb. 301, 310; 85 N. Y. 278; 4 Den. 95.) Chapter 141, Laws of 1886, so far as it prohibits fishing in the waters of Lake Ontario, is unconstitutional. (Laws of 1879, chap. 534, § 26; Laws of 1880, chap. 531; *People* v. *Marx,* 99 N. Y. 377; *People* v. *Gillson,* 109 id. 389; *Matter of Jacobs,* 98 id. 98, 106; *People* v. *Arensberg,* 105 id. 123. *People* v. *West,* 106 id. 293, 297; *People* v. *Kibler,* Id. 321; Angell on Tide Waters, 21, 80, 107, 124; *Sloan* v. *Biemiller,* 34 Ohio St. 513, 514; 3 Kent's Com. 418; *Gould* v. *James,* 6 Cow. 369, 376; *Brookhaven* v. *Strong,* 60 N. Y. 56, 67; Hale's De Jure Maris, part 1, chap. 4; *In re Cheesebrough,* 78 N. Y. 237, 238; *In re D. C. Assn.,* 66 id. 569; *Wynehamer* v. *People,* 13 id. 378; *Rosevelt* v. *Godard,* 52 Barb. 534; *Rogers* v. *Jones,* 1 Wend. 259, 260; Const. of N. Y. Art. 1, §§ 1, 6; U. S. Const. [14th Amend.] 31; *People* v. *Otis,* 90 N. Y. 48, 52; *State* v. *F. F. Co.,* 6 Am. Rep. 510, 513.) Chapter 141, Laws of 1886, does

not prohibit fishing in the waters of Black River bay. (*Sprague* v. *Birdsall*, 2 Cow. 419; *McManus* v. *Gavin*, 77 N. Y. 36; *Washington Cemetery* v. *P. P. & C. I. R. R. Co.* 68 id. 591; *Rockwell* v. *Nearing*, 35 id. 302, 312; *Bonnell* v. *Griswold*, 80 id. 128; *Van Valkenburg* v. *Torrey*, 7 Cow. 252; *French* v. *McMillan*, 26 Wkly. Dig. 46; *Strong* v. *Stebbins*, 5 Cow. 210; *Whittaker* v. *Masterton*, 106 N. Y. 277; *Carpenter* v. *People*, 8 Barb. 603, 605; *V. C. C. Co.* v. *Muntaugh*, 50 N. Y. 314; *B. & U. P. R. Co.* v. *Robbins*, 22 Barb. 662; *W. A. Co.* v. *Barlow*, 68 N. Y. 34; *Chase* v. *N. Y. C. R. R. Co.*, 26 id. 523, 525; *Whitney* v. *Baker*, 63 id. 62, 67; *Sherwin* v. *People*, 100 id. 362; *Coxson* v. *Doland*, 2 Daly, 66, 68; *Areson* v. *Areson*, 3 Den. 458; *Lambert* v. *People*, 76 N. Y. 220, 227.) The nets in question were not set in violation of any law for the protection of fish, and hence their seizure was not justified by chapter 591, Laws of 1880, as amended by chapter 317, Laws of 1883. (Laws of 1886, chap. 141; *V. C. C. Co.* v. *Murtaugh*, 50 N. Y. 314; *B. & N. P. Road* v. *Robbins*, 22 Barb. 662; *Hoyt* v. *Thompson*, 5 N. Y. 320, 340.) The state having conveyed away the land covered by Black River bay, the legislature had no power to prohibit fishing in its waters. (*Rogers* v. *Jones*, 1 Wend. 255–259; *People* v. *Thompson*, 30 Hun, 457, 459; *Trustees of Brookhaven* v. *Strong*, 60 N. Y. 56, 57, 71, 72; *Smith* v. *City of Rochester*, 92 id. 464, 477; *Palmer* v. *Hicks*, 6 Johns. 133; *Hooker* v. *Cummings*, 20 id. 91.)

*Elon R. Brown* for respondent. The right and duty to regulate, control and protect the fisheries in navigable waters along the shores of the ocean and of the great lakes has always been within the province of the state owning the adjacent territory. (*Smith* v. *Maryland*, 18 How. [U. S.] 71; *Smith* v. *Levinus*, 8 N. Y. 472; *Bank* v. *Richtmeyer*, 14 Johns. 255; *Hooker* v. *Cummings*, 20 id. 101; 1 Wend. 260; *Osgood's Case*, 6 City H. Rec. 4; *State* v. *Roberts*, 59 N. H. 256; 34 Ohio St. 492.) The state possesses ample authority to rid the fisheries of such devices as are destructive of them

without negotiations with or judicial proceedings against the offending owners who have constructed or placed such devices in the fisheries in violation of the law protecting the same. (*Phelps* v. *Racy*, 60 N. Y. 10; 13 Vr. [N. J.] 345; 97 Ill. 332, 337; *State* v. *Snover*, 342 N. J. L. 41; *Williams* v. *Blackwell*, 2 H. & C. 33; *Smith* v. *Levinus*, 8 N. Y. 472.) The legislature may, by virtue of its police power in the exercise of a reasonable discretion, declare that a nuisance which was not before a nuisance, or legalize a nuisance so that no one will have the right to abate it. (*Coe* v. *Shults*, 47 Barb. 65; *Matter of Jacobs*, 98 N. Y. 98, 108, 109; *Reg* v. *Crashow*, Bell, C. C. 303; 30 L. J. M. C. 58; *McLaughlin* v. *State*, 45 Ind. 338; *Munroe* v. *Grespach*, 33 La. Ann. 1011; *State* v. *Fowler*, 13 R. I. 661; *Miller* v. *Mayor, etc.*, 109 U. S. 385; *Leigh* v. *Westervelt*, 2 Duer, 618; *Harris* v. *Thompson*, 9 Barb. 350; *Griffith* v. *McCullum*, 46 id. 561; *Babcock* v. *City of Buffalo*, 36 N. Y. 268; *Hart* v. *Mayor, etc.*, 3 Paige, 213; *Harrower* v. *Ritson*, 37 Barb. 301; *Kellogg* v. *Thompson*, 66 N. Y. 88; *Rockwell* v. *Nearing*, 35 id. 302; Wood on Nuisances, 1; *State* v. *Snover*, 42 N. J. L. 341; *Williams* v. *Blackwell*, 2 H. & C. 33; Penal Code, § 385.) The fisheries in Lake Ontario are held by the state of New York in trust for the benefit of all her people, and the right and duty to regulate and control them spring from the obligations of this trust. (Penal Code, §§ 338, 345, 346.) The enactment of laws for the protection of fish in certain localities is constitutional. (*Phelps* v. *Racy*, 60 N. Y. 10; *State* v. *Roberts*, 59 N. H. 256; 47 Am. Rep. 199.) These nets were set with the intention of taking fish. This taking was in violation of chapter 141, Laws 1886, and was a crime. The attempt to commit a crime is a crime. (Penal Code, §§ 34, 686.) The nets were set in direct violation of law. (Laws of 1883, chap. 317, § 2.)

ANDREWS, J. The conclusions of the trial judge that Black River Bay is a part of Lake Ontario, within the meaning of chapter 146 of the Laws of 1886, and that the nets set therein

were set in violation of the act chapter 591 of the Laws of 1880, as amended by chapter 317 of the Laws of 1883, were affirmed by the General Term. The trial judge, in his careful opinion, demonstrated the correctness of these conclusions, and nothing can be added to reinforce the argument by which they were sustained.

The point of difference between the trial court and the General Term relates to the constitutionality of the second section of the act of 1880, as amended in 1883. That section is as follows: " Sec. 2. Any net found, or other means or device for taking or capturing fish, or whereby they may be taken or captured, set, put, floated, had, found or maintained in or upon any of the waters of this state, or upon the shores or islands in any waters of this state, in violation of any existing or hereafter enacted statutes or laws for the protection of fish, is hereby declared to be, and is a public nuisance, and may be abated and summarily destroyed by any person, and it shall be the duty of each and every (game and fish) protector aforesaid and of every game constable, to seize and remove and destroy the same,   *   *   *   and no action for damages shall be maintained against any person for or on account of any such seizure or destruction." The defendant justified the seizure and destruction of the nets of plaintiff, as a game protector, under this statute, and established the justification, if the legislature had the constitutional power to authorize the summary remedy provided by the section in question. The trial judge held the act in this respect to be unconstitutional, and ordered judgment in favor of the plaintiffs for the value of the nets. The General Term sustained the constitutionality of the statute and reversed the judgment. We concur with the General Term for reasons which will now be stated.

The legislative power of the state which by the Constitution is vested in the senate and assembly (§ 1, art. 3), covers every subject which in the distribution of the powers of goverment between the legislative, executive and judicial departments, belongs by practice or usage, in England or in this country, to the legislative department, except in so far as such power

has been withheld or limited by the Constitution itself, and subject also to such restrictions upon its exercise as may be found in the Constitution of the United States. From this grant of legislative power springs the right of the legislature to enact a criminal code, to define what acts shall constitute a criminal offense, what penalty shall be inflicted upon offenders, and generally to enact all laws which the legislature shall deem expedient for the protection of public and private rights, and the prevention and punishment of public wrongs. The legislature may not declare that to be a crime which in its nature is and must be under all circumstances innocent, nor can it in defining crimes, or in declaring their punishment, take away or impair any inalienable right secured by the Constitution. But it may, acting within these limits, make acts criminal which before were innocent, and ordain punishment in future cases where before none could have been inflicted. This, in its nature, is a legislative power, which, by the Constitution of the state, is committed to the discretion of the legislative body. (*Barker* v. *People*, 3 Cow. 686; *People* v. *West*, 106 N. Y. 293.) The act in question declares that nets set in certain waters are public nuisances, and authorizes their summary destruction. The statute declares and defines a new species of public nuisance, not known to the common law, nor declared to be such by any prior statute. But we know of no limitation of legislative power which precludes the legislature from enlarging the catagory of public nuisances, or from declaring places or property used to the detriment of public interests or to the injury of the health, morals or welfare of the community, public nuisances, although not such at common law. There are, of course, limitations upon the exercise of this power. The legislature cannot use it as a cover for withdrawing property from the protection of the law, or arbitrarily, where no public right or interest is involved, declare property a nuisance for the purpose of devoting it to destruction. If the court can judicially see that the statute is a mere evasion, or was framed for the purpose of individual oppression, it will set it aside as unconstitutional, but not other-

wise. (*In re Jacobs*, 98 N. Y. 98 ; *Mugler* v. *Kansas*, 123 U. S. 661.)

There are numerous examples in recent legislation, of the exercise of the legislative power to declare property held or used in violation of a particular statute, a public nuisance, although such possession and use before the statute was lawful. The prohibitory legislation relative to the manufacture or sale of intoxicating liquors, in various states, has in many cases been accompanied by provisions declaring the place where liquor is unlawfully kept for sale, as well as the liquor itself, a common or public nuisance, and while the validity of prohibitory statutes in their operation upon liquors lawfully acquired or held before their passage, and in respect of the procedure authorized thereby, have been the subject of much contention in the courts, the right of the legislature by a new statute to impose upon property held or used in the violation of law, the character of a public nuisance is generally admitted. ( *Wynehamer* v. *People*, 13 N. Y. 378 ; *Fisher* v. *McGirr*, 1 Gray, 1 ; *Mugler* v. *Kansas, supra*.)

The legislative power to regulate fishing in public waters has been exercised from the earliest period of the common law. The statute 2 H. 6, C. 15 prohibited the use of nets in the Thames, if they obstruct navigation or the passage of fish. Lord Hale in his treatise (De Jure Maris, page 23), says that " the fishing which the subject has in this or any other public or private river, or creek, fresh or salt, is subject to the laws for the conservation of fish and fry, which are many." In this state many statutes have been enacted, commencing at an early period, regulating the right of fishing in the waters of the state, prohibiting the use of nets or the taking of fish at certain seasons, and for the protection of certain kinds of fish. (1 Rev. St. [Ed's. ed.] 687 *et seq. ;* 4 id. 96 *et seq.*) It has become a settled principle of public law that power resides in the several states to regulate and control the right of fishing in the public waters within their respective jurisdictions. (*Smith* v. *Maryland*, 18 How. [U. S.] 71 ; *Hooker* v. *Cummings*, 20 Johns. 100 ; *Smith* v. *Levinus*, 8 N. Y. 472 ;

3 Kent Com. 415.) We think it was competent for the legislature, in exercising the power of regulation of this common and public right, to prohibit the taking of fish with nets in specified waters, and by its declaration, to make the setting of nets for that purpose a public nuisance. The general definition of a nuisance given by Blackstone is, "anything that worketh hurt, inconvenience, or damage." It is generally true, as stated by a recent writer (Wood on Nuisances, § 11), that nuisances arise from the violation of the common law, and not from the violation of a public statute. But this, we conceive, is true only where the statute creating a right or imposing an obligation affixes a penalty for its violation, or gives a specific remedy which by the terms of the statute or by construction is exclusive (See *Bulbrook* v. *Goodere*, 3 Burr. 1770.) But the principle stated has no application where the statute itself prescribes that a particular act or the property used for a noxious purpose, shall be deemed a nuisance. The legislature in the act in question, acting upon the theory and upon the fact (for so it must be assumed) that fishing with nets in prohibited waters is a public injury, have applied the doctrine of the common law to a case new in instance, but not in principle, and made the doing of the prohibited act a nuisance. This we think it could lawfully do.

The more difficult question arises upon the provision in the second section of the act of 1883, which authorizes any person, and makes it the duty of the game protector to abate the nuisance caused by nets set in violation of law, by their summary destruction. It is insisted that the destruction of nets by an individual, or by an executive officer so authorized, without any judicial proceeding, is a deprivation of the owner of the nets of his property, without due process of law, in contravention of the Constitution. The right of summary abatement of nuisances without judicial process or proceeding, was an established principle of the common law long before the adoption of our Constitution, and it has never been supposed that this common-law principle was abrogated by the provision for the protection of life, liberty and property in our state Constitution,

although the exercise of the right might result in the destruction of property. This question was referred to by SUTHERLAND, J., in *Hart* v. *Mayor, etc.* (9 Wend. 590). He said: "If this is a case in which the corporation or any other person had a right summarily to remove or abate this obstruction, then the objection that the appellants by this course of proceeding may be deprived of their property without due process of law, or trial by jury, has no application. Former legal proceedings and trial by jury are not appropriate to, and have never been used in such cases." (See, also, opinion of Edmonds, senator, in same case, page 609.) In the *License Tax Case* (5 How. [U. S.] 504), Judge MCLEAN, speaking of this subject, said: "The acknowledged police power of a state often extends to the destruction of property. A nuisance may be abated. Everything prejudicial to the health and morals of a city may be removed." In *Rockwell* v. *Nearing* (35 N. Y. 308), PORTER, J., speaking of the constitutional provision, said "there were many examples of summary proceedings which were recognized as due process of law at the date of the Constitution, and to them the prohibition has no application." Quarantine and health laws have been enacted from time to time from the organization of our state government, authorizing the summary destruction of infected cargo, clothing or other articles, by officers designated, and no doubt has been suggested as to their constitutionality. In *Hart* v. *Mayor, etc. (supra)*, a question was raised as to the validity of a city ordinance, subjecting a float moored in the Albany basin to summary seizure and sale upon failure of the owner to remove the same after notice. The court held the ordinance to be void as not within the power conferred upon the city by its charter, but it was held that the common law right of abatement existed, although the removal of the float in question involved its destruction. *Van Wormer* v. *Mayor, etc.* (15 Wend. 263), sustained the right of a municipal corporation to dig down a lot in the city, to abate a nuisance although in the process of abatement buildings thereon were pulled down. In *Meeker* v. *Van Rensselaer* (15 Wend. 397), the court justified the act of the defendant as an individual

citizen, in tearing down a filthy tenement house which was a nuisance, to prevent the spread of the Asiatic cholera.

These authorities sufficiently establish the proposition that the constitutional guaranty does not take away the common law right of abatement of nuisances by summary proceedings, without judicial trial or process. But in the process of abating a nuisance there are limitations both in respect of the agencies which may be employed, and as to what may be done in execution of the remedy. The general proposition has been asserted in text-books and repeated in judicial opinions, that any person may abate a public nuisance. But the best considered authorities in this country and England now hold that a public nuisance can only be abated by an individual where it obstructs his private right, or interferes at the time with his enjoyment of a right common to many, as the right of passage upon the public highway, and he thereby sustains a special injury. (*Brown* v. *Perkins*, 12 Gray, 89 ; *Mayor of Colchester* v. *Brooke*, 7 Ad. & El. 339 ; *Dimes* v. *Petley*, 15 *id.* 276 ; *Fort Plain Bridge Co.* v. *Smith*, 30 N. Y. 44 ; *Harrower* v. *Ritson*, 37 Barb. 301.)

The public remedy is ordinarily by indictment for the punishment of the offender, wherein on judgment of conviction the removal or destruction of the thing constituting the nuisance, if physical and tangible, may be adjudged, or by bill in equity filed in behalf of the people. But the remedy by judicial prosecution, *in rem* or *in personam*, is not, we conceive, exclusive, where the statute in a particular case gives a remedy by summary abatement, and the remedy is appropriate to the object to be accomplished. There are nuisances arising from conduct, which can only be abated by the arrest and punishment of the offender, and in such cases it is obvious that the legislature could not directly direct the sheriff or other officer to seize and flog or imprison the culprit. The infliction of punishment for crime is the prerogative of the court and cannot be usurped by the legislature. The legislature can only define the offense and prescribe the measure of punishment, where guilt shall have been judicially ascer-

tained. But as the legislature may declare nuisances, it may also, where the nuisance is physical and tangible, direct its summary abatement by executive officers, without the intervention of judicial proceedings, in cases analogous to those where the remedy by summary abatement existed at common law. MARVIN, J., in his able opinion in *Griffith* v. *McCullum* (46 Barb. 561), speaking of the remedy for the abatement of nuisances, says: "That which is exclusively a common law or public nuisance, cannot be abated by the private acts of individuals. The remedy is by indictment or criminal prosecution, unless the statute has provided some other remedy." The cases of *Hart* v. *Mayor, etc.* (*supra*), *Van Wormer* v. *Albany* (*supra*), and *Meeker* v. *Van Rensselaer* (*supra*), show that the public remedy is not in all cases confined to a judicial prosecution.

But the remedy by summary abatement cannot be extended beyond the purpose implied in the words, and must be confined to doing what is necessary to accomplish it. And here lies, we think, the stress of the question now presented. It cannot be denied that in many cases a nuisance can only be abated by the destruction of the property in which it consists. The cases of infected cargo or clothing and of impure and unwholesome food are plainly of this description. They are nuisances *per se*, and their abatement is their destruction. So, also, there can be little doubt, as we conceive, that obscene books or pictures, or implements only capable of an illegal use, may be destroyed as a part of the process of abating the nuisance they create, if so directed by statute. The keeping of a bawdy house, or a house for the resort of lewd and dissolute people, is a nuisance at common law. But the tearing down of the building so kept, would not be justified as the exercise of the power of summary abatement, and it would add nothing, we think, to the justification that a statute was produced authorizing the destruction of the building summarily as a part of the remedy. The nuisance consists in the case supposed in the conduct of the owner or occupants of the house, in using or allowing it to be used for the immoral

purpose, and the remedy would be to stop the use.  This would be the only mode of abatement in such case known to the common law, and the destruction of the building for this purpose would have no sanction in common law or precedent. (See *Babcock* v. *City of Buffalo*, 56 N. Y. 268; *Barclay* v. *Commonwealth*, 25 Penn. St. 503; *Ely* v. *Board of Supervisors*, 36 N. Y. 297.)

But where a puplic nuisance, consists in the location or use of tangible personal property, so as to interfere with or obstruct a public right or regulation, as in the case of the float in the Albany basin (9 Wend. 571), or the nets in the present case, the legislature may, we think, authorize its summary abatement by executive agencies without resort to judicial proceedings, and any injury or destruction of the property necessarily incident to the exercise of the summary jurisdiction, interferes with no legal right of the owner.  But the legislature cannot go further.  It cannot decree the destruction or forfeiture of property used so as to constitute a nuisance as a punishment of the wrong, nor even, we think, to prevent a future illegal use of the property, it not being a nuisance *per se*, and appoint officers to execute its mandate. The plain reason is that due process of law requires a hearing and trial before punishment, or before forfeiture of property can be adjudged for the owner's misconduct.  Such legislation would be a plain usurpation by the legislature of judicial powers, and under guise of exercising the power of summary abatement of nuisances, the legislature cannot take into its own hands the enforcement of the criminal or *quasi* criminal law.  (See opinion of SHAW, Ch. J., in *Fisher* v. *McGirr*, *supra*, and in *Brown* v. *Perkins*, 12 Gray, 89.)

The inquiry in the present case comes to this: Whether the destruction of the nets set in violation of law, authorized and required by the act of 1883, is simply a proper, reasonable and necessary regulation for the abatement of the nuisance, or transcends that purpose, and is to be regarded as the imposition and infliction of a forfeiture of the owners' right of property in the nets, in the nature of a punishment.  We

regard the case as very near the border line, but we think the legislation may be fairly sustained on the ground that the destruction of nets so placed is a reasonable incident of the power to abate the nuisance. The owner of the nets is deprived of his property, but not as the direct object of the law, but as an incident to the abatement of the nuisance. Where a private person is authorized to abate a public nuisance, as in case of a house built in a highway, or a gate across it, which obstructs and prevents his passage thereon, it was long ago held that he was not required to observe particular care in abating the nuisance, and that although the gate might have been opened without cutting it down, yet the cutting down would be lawful. (*Lodie* v. *Arnold,* 2 Salk. 458, and cases cited.) But the general rule undoubtedly is that the abatement must be limited by necessity, and no wanton and unnecessary injury must be committed (3 Bl. 6, note.) It is conceivable that nets illegally set could, with the use of care, be removed without destroying them. But in view of their position, the difficulty attending their removal, the liability to injury in the process, their comparatively small value, we think the legislature could adjudge their destruction as a reasonable means of abating the nuisance.

These views lead to an affirmance of the order of the General Term. The case of *Weller* v. *Snover* (42 N. J. L. 341) tends to sustain the conclusion we have reached. The action in that case was trespass, for entering the plaintiff's lands, bordering a non-navigable stream in New Jersey, and destroying a fish basket placed in the waters diverted therefrom, for the catching of fish, contrary to a statute. The court held the statute to be a justification. The case of *Williams* v. *Blackwall* (2 Hurlst. & Colt. 33) arose under an act of Parliament which authorized the summary destruction by fish wardens, of what was know as salmon engines, being fish nets set in violation of the act. The case is not an authority upon the power of our legislature under the limitations of the state Constitution, but the legislation upon which the action was founded shows that in a country governed by the principles of Magna

Charta, such legislation is not deemed inconsistent with the fundamental doctrines of civil liberty.

It is insisted that the provision in the act of 1883, authorizes the destruction of nets found on the land, on shores or islands adjacent to waters, where taking of fish by nets is prohibited, and that this part of the statute is in any view unconstitutional. Assuming this premise it is claimed that the whole section must fall, as the statute, if unconstitutional as to one provision, is unconstitutional as a whole. This is not, we think, the general rule of law, where provisions of a statute are separable, one of which only is void. On the contrary the general rule requires the court to sustain the valid provisions, while rejecting the others. Where the void matter is so blended with the good that they cannot be separated, or where the court can judicially see that the legislature only intended the statute to be enforced in its entirety, and that by rejecting part the general purpose of the statute would be defeated, the court, if compelled to defeat the main purpose of the statute, will not strive to save any part. (See *Fisher* v. *McGirr, supra.*)

The order granting a new trial should be affirmed and judgment absolute ordered for the defendant on the stipulation, with costs.

All concur, except O'BRIEN, J., not sitting.

Order affirmed and judgment accordingly.