### PEOPLE v. FEATHERLY.

(*Supreme Court, General Term, Fifth Department.* January 24, 1891.)

GAME LAWS—WATER SUBJECT TO—LAKE ONTARIO.

Sodus bay, in Wayne county, is about five miles long and three miles wide. It is separated from Lake Ontario by a bar about a mile in length. At one end of the bar is an opening into the lake about 300 feet long, dredged to make a harbor for vessels. At times other openings are washed through the bar. Several streams empty into the bay, but they are not sufficient to supply all its water. The water flows from the bay into the lake, or from the lake into the bay, according to the wind. *Held,* that Sodus bay is part of Lake Ontario, within Laws N. Y. 1879, c. 534, § 6, (game law,) declaring that the provisions thereof shall not apply to the waters of Lake Ontario.

Motion for judgment on verdict subject to opinion of the court.

Action by the people of the state of New York against Charles Featherly to recover penalties for violating the game laws. A verdict was directed for plaintiff, who moved for judgment subject to the opinion of the general term.

Argued before DWIGHT, P. J., and MACOMBER and CORLETT, JJ.

*Howard Widener,* for plaintiff. *John Gillette,* for defendant.

CORLETT, J. This action was brought to recover penalties for the alleged illegal shooting of duck on the waters of Great Sodus bay, contrary to the provisions of the "Act for the preservation of moose, wild duck, birds, fish, and other game," (chapter 534, Laws 1879.) The charge in the complaint against the defendant was that he used a floating battery or device, which concealed him, for the purpose of killing wild geese, brant, and duck on Great Sodus bay, in the county of Wayne, contrary to the provisions of section 6, Sess. Laws, above referred to. The second count of the complaint charged the defendant with shooting out of this battery at the time mentioned at wild geese, brant, and duck. Judgment for $100 was demanded. Section 6 of the act referred to is as follows: "No person shall use any floating battery, machine, or other device, whereby the gunner is concealed, for the purpose of killing any wild fowl, or shoot out of any such floating battery, machine, or device, at any wild goose, brant, or duck, in any of the waters of this state, or use any decoy or construct any bow-house, at a greater distance than twenty rods from the shore, for the purpose of shooting at or killing any such birds. Any person violating any of the provisions of this section shall be deemed guilty of a misdemeanor, and in addition thereto shall be liable to a penalty of fifty dollars for each offense. But nothing in this section shall apply to the waters of the Great South bay, west of Smith's Point, or the waters of Peconic bay, or Shinnecock bay, or Lake Ontario, or the river St. Lawrence, or the Hudson river, below Albany." The answer put in issue any unlawful act on the part of the defendant. The record shows no exceptions. At the close of the evi-

dence the court directed a verdict of $50 for the plaintiff, subject to the opinion of this court. George M. Schwartz, one of the fish and game inspectors of this state, went to Sodus bay in April, 1890, on information that the game law had been or would be violated. Sodus bay is a body of fresh water in Wayne county, about five miles long and three miles wide, which has an opening into Lake Ontario, from which it is separated by a bar about a mile in length. This bar varies in width from three to ten rods, with bushes or small trees growing upon it at different places. At times this bar would be washed away at places by the waters of the lake, but at the time of the trial there was practically but one outlet, which was 300 or 400 feet wide, at the west end of the bar. This outlet is dredged to make a harbor for vessels, and is protected by piers. The lake shore is on the north side of the bay, and is not ordinarily connected except by the channel. Several streams empty into the bay, known as the "First," "Second," and "Third" creeks, on the west side, and Glenmark creek at the head of the bay. More or less water continually flows in those creeks, but in dry weather the amount conveyed by them is comparatively trifling. There is also a small stream on the east side of the bay called "Clark's Creek." Heavy winds, from a northerly direction, occasionally break over the bar from the lake, and make openings through it. On the 1st day of April, 1890, the defendant was in a floating battery on Long island near the bay. This contrivance was 6 feet square and 6 feet deep, with eaves out about 12 feet. The whole arrangement concealed the defendant from view. Nearly 200 decoys were anchored about this machine, which was between 16 and 40 rods from the shore. He shot out of this box at ducks. It does not appear that he hit any, but at the time they were flying about.

The controlling question before the court is whether Sodus bay is a part of Lake Ontario. The only evidence given on the trial, bearing on the subject, is as follows: Schwartz, the game inspector, testified, among other things: "I do not doubt that some of the waters in the bay come from Lake Ontario. There is quite a channel for it to come from the lake into the bay. I do not know how much. It is wide enough to have boats run in. There are three or four hundred feet of the channel, which is navigable." Frederick C. Wickam, a witness for the defendant, testified in substance that he sailed on the bay and had for 40 years; that the sand-bar between the lake and the bay, so far as he had any knowledge or recollection, was formed by the action of the waters and waves of the lake; that he had known gaps to wash through the bar on different occasions. Charles A. Featherly, the defendant, testified in his own behalf that at the time of the shooting he was not over 16 rods from the shore, and a little less than a mile from the lake; that for more than 40 years he had been familiar with the bay and outlets; that but a small portion of the waters of the bay comes from the creeks; that the great bulk is supplied by the lake; when the wind would be in a certain direction, the waters of the lake would wash over the bar, and there would be a strong current in the channel running three or four miles an hour, three or four hundred feet wide; that the channel was sixteen feet deep. Edward H. Sentell, a witness for the defendant, testified in substance that he had lived on Sodus point 16 years, and was familiar with it and the lake, including the streams; that at certain seasons of the year considerable water would flow from the streams, but in dry times very little; that occasionally the bar would, in places, be entirely carried away by the waters of the lake, and that the supply of the waters of the bay was furnished mainly from the lake; that in the channel there is a natural flow in and out, the waters running both ways, at short intervals, and that the flow did not altogether depend on the direction of the wind; that the bay was navigable from the lake before the piers were built, since which dredging was necessary to keep the channel open. He also testified in substance that occasionally the water of the lake and bay would commingle by the washing out of portions of the bar.

· Section 23 of the above act provides that "no person shall kill or catch, or attempt to kill or catch, any fish, except minnows, bullheads, eels, suckers, and catfish, in any of the fresh waters or canals of this state, or in the American waters of the St. Lawrence river, or in the waters of the Niagara river on the American side, between the falls of said river and Lake Erie, in any way or manner, or by any device whatever, except that of angling with hook and line, save only in the following waters, viz., the Hudson river, below the dam at Troy; Black river, in the county of St. Lawrence; St. Regis river, Grass river, and Racket river, below the line of the Ogdensburg & Lake Champlain Railroad; and in Lake Ontario, except Great Sodus bay, Port bay, East bay, in the county of Wayne; Henderson harbor or Henderson bay, in the county of Jefferson; and also except in Lake Otsego, and also in Lake Champlain, during the month of October and the first fifteen days in November." The learned counsel for the defendant contends that this section proves that the legislature construed Sodus bay to be a part of Lake Ontario, and urges this view in connection with others in support of his contention that the bay was a part of the lake. In view of the location of the bay, which was nearly separated by a sand-bar from the waters of the lake, it is quite evident that the bay was originally part of the lake. All the evidence satisfactorily shows that the creeks feeding the bay were inadequate to supply anything like the amount of water it contained. The lake and bay emptied into each other, the flow either way being determined by the course and strength of the wind. If it had been the intention of the legislature to exclude shooting in the bay when it was allowed in the lake, it is reasonable to assume that clear language would have been used to show such legislative intent. But when in the same chapter creating the offense the legislature indicate that they construed the bay as belonging to the lake, it would require a forced construction to treat it as forming no part of the lake. The general rule is that an act will not be construed as imposing a penalty if the language will fairly admit of a different construction. *Hayes* v. *Davidson,* 98 N. Y. 22; *Wood* v. *Railroad Co.,* 72 N. Y. 198; *Hintermister* v. *Bank,* 64 N. Y. 212; *Hoyt* v. *Bonnett,* 50 N. Y. 538; *Cheese Co.* v. *Murtaugh,* Id. 317. If sufficient reasons existed for having different rules on the subject of game for Sodus bay from those which apply to the lake, the legislature would have made them. But in view of the fact that all the probabilities, as well as the evidence, indicate that the waters of the lake and bay were the same, and that the bar was formed by the action of wind and wave, it would be a forced construction to hold that under the chapter referred to a person shooting in the bay would be liable for a penalty, and also guilty of a misdemeanor, while one doing like acts upon the lake would be exempt. Penalties should not be imposed or punishments inflicted unless clearly authorized by statute or other provision of law. In *Lawton* v. *Steele,* 119 N. Y. 226, 23 N. E. Rep. 878, Black River bay of the lake was held to be a part of it. The defendant's act was not prohibited by the statute, and judgment must be directed in his favor. All concur.