Blrket, C. J.
The object of the action is to test the constitutionality of the sections of the statute mentioned in the petition. The original statute was passed in the year 1869, and its provisions have been carried into the Revised Statutes. The sections are as follows:
“Section 3342. There shall be constructed and kept open, along the roadbed of every railroad, except where the road extends through or by swamp land, by the company or person operating the road, ditches or drains of sufficient depth, width, and grade to conduct to some proper outlet the water which accumulates along the sides of such roadbed from the construction or operation of such road.
“Section 3343. If, after ten days’ notice or request to any ticket or other agent of the company or person operating a railroad, to provide such drain or ditch, preferred by the person authorized to institute the proceedings hereinafter provided for, the provisions of the foregoing section be not complied with, any owner or tenant of land contiguous to such railroad feeling aggrieved by such neglect may give notice of the fact, in writing, to the probate judge of the county in which such neglect occurs, designating in such notice the place or places on such road where such drains or ditches have not been made; and upon the receipt of such notice the probate judge shall appoint *287 a commission of three disinterested freeholders of such county, who together with the county surveyor^ shall proceed to the place designated in the notice, and, if upon inspection, it is found that the .provisions of the preceding section are not complied with, the commission or a majority thereof, shall report the same to such probate judge, who shall keep a record of such proceedings; and the probate judge shall designates time within which such ditches or drains shall be made or opened and shall forthwith notify the company or person operating such road, in writing, whose duty it shall be to make or open such ditches or drains within the time specified.
“Section 3344. If such company or person neglect to comply with the notification of the probate judge, he shall forthwith, by advertisement for three consecutive weeks, in one or more of the weekly newspapers published in such county, give notice that the work of making or opening the ditches or drains will be let to the lowest bidder at such time and place as shall be designated in the advertisement.
“Section 3345. The probate judge shall, at the time and place specified in the advertisement, sell the job or jobs of making or opening such ditches or drains to the lowest bidder, and take from such bidder a sufficient bond, with surety, for the performance thereof, and upon the completion thereof to the satisfaction of the probate judge, he shall give the bidder a certificate therefor, stating the amount due for the work; and upon presentation of the certificate to the auditor of the county, he shall place the amount so certified forthwith upon the tax duplicate of the county, against the company, together with all the costs and expenses for inspection by the commission and surveyor, notices, advertisements, sale of work, *288 making contract therefor, approval, of the work, and other costs, .and interest on the amount certified to be due for the work from the time the work is approved until the amount can be collected by the treasurer of •the county; and such tax shall be collected as other taxes, and be paid to the persons entitled thereto on the warrant of the county auditor on the county treasurer.
“Section 3346. The probate judge, commissioners, and surveyor shall be entitled to receive for their services such costs, fees and expenses as are provided by law for costs, fees, and expenses of county commissioners and others under proceedings relating to ditches.”
That a duty may rest upon a railroad company to remove such water as accumulates along the sides of its roadbed from the construction or operation of its road, to the injury of contiguous lands, or to the detriment of the public health, convenience and welfare, seems clear, and that such railroad company may be compelled by statute and upon proper proceedings to discharge such duty and remove such water is equally clear; but where such water so accumulates on the right of way and along the sides of such roadbed, and does' no injury to contiguous lands, and is not detrimental to the public health, convenience and welfare, the railroad company cannot be compelled by statute to remove the same, because it has the right to use its right of way, its property, as it pleases, so long as such use does no injury to the public or to private persons. The right to store water on the right of way, may in certain cases, be a valuable right, and when no injury results from such storage, the right cannot be curtailed.
Where an accumulation of water along the sides of *289 such roadbed is not detrimental to the public health, convenience or welfare, but is injurious to contiguous lands, the injury arising from such accumulation is not an injury to the public, to be by it redressed or prevented, but is a private injury to the contiguous lands, to be redressed by the owners by an action for ■damages, or other proper action, in the court of common pleas, the probate court not having jurisdiction •of such actions.
The ditch act of May 1, 1854, was held unconstitutional for the reason that it authorized the entry upon lands of others, and the construction of drains, when ■demanded by private interest merely, without reference to public interests, convenience, or welfare. Reeves v. Treasurer of Wood County, 8 Ohio St., 333, 346. And in McQuillen v. Hatton, 42 Ohio St., 202, this Court again held that ditches could be constructed only in the interest of the public, and that the fact that larger crops could be raised on lands to be benefited by a ditch, was a private, and not a public, interest, and would not warrant the establishment of the proposed ditch.
The sections in question do not in the least provide for the protection of the public health, convenience or welfare, but are solely for the redress of grievances of ■private persons, the owners of lands contiguous to the railroad. And said sections are so broad that under them railroads might be compelled by the owner or tenant of contiguous lands, to drain off all such accumulations of water, even -though not injurious to such lands or the public, and accumulated and stored on the right of way for the use of such railroad.' The general assembly has not the power to impose or enforce such a duty.
By these sections authority is attempted to be given *290 for the lowest bidder to enter upon the right of Avay of the railroad, and construct a ditch for the sole benefit of a private individual, without reference to the interests of the public. The costs of such ditch, and all costs of the proceedings, are to be assessed against the railroad, placed upon the tax duplicate, collected by the county treasurer as other taxes, and paid over to such bidder upon the warrant of the county auditor. And all this is done not in the interest of the public, but in the interest of private persons. It is not so much a case in which private property is taken for public use for which compensation must be first made in money, as it is a taking of private property for private use, and therefore in violation of that part of section 19 of the Bill of Rights which says: “Private property shall ever be held inviolate, but subservient to the public welfare.” The money required to pay the assessment is the private property of the railroad company and cannot be taken from it for the private welfare of another.
The sections in question provide solely for the relief of the lands of private individuals in their private interests, and seek to impose a burden by way of assessment, to be collected as taxes from the railroad company for "the private benefit of such individuals, and for that reason are unconstitutional. Assessments and taxes can be levied and collected only for public purposes.
There is another reason Avhy these sections are unconstitutional: An assessment is attempted to be authorized upon the railroad company without an opportunity to be heard. The OAvner or tenant of land contiguous to the railroad may give ten days’ notice to any ticket or other agent of such company to provide such ditch, and upon failure to do so, he may give *291 notice in writing to the probate judge of the county, and the judge thereupon appoints a commission to inspect the part of the road in question and report (o him. Thereupon the judge notifies the railroad company in writing to open such ditch within a time specified. If hot opened the probate judge, upon three weeks-' notice by advertisement, lets the work of opening such ditch to the lowest bidder. After the work is completed the cost thereof, and all costs of the proceeding, are to be certified to the auditor, placed on the duplicate, collected as other taxes, and paid over to the person who did the work. The railroad company is notified by the owner or tenant to open the ditch, and is also notified by the probate judge to open it, but no notice is given to it of any hearing, and no provision whatever is made for a hearing at any stage of the proceedings
It may be that the railroad extends through or by swamp land, in which case the statute by its terms is not applicable. It may be that the ditches already provided are of sufficient depth, width, and grade to conduct the water to a proper outlet. It may be that the accumulation of water does not arise from the construction or operation of the road, but from the natural lay of the land. It may be that no public interest is to be conserved, for which alone an assessment can be made. It may be that the accumulation of water is not injurious to contiguous lands or the public. As to all these, and other material matters, the railroad company has a right to be heard before it is condemned to suffer and pay an assessment. Reasonable notice, and an opportunity to be heard in defense or opposition, are prerequisites to jurisdiction; and an assessment made without such notice and opportunity to be so heard is void, not only for want of *292 jurisdiction but also because there was not due process of law.
While taxes are laid without notice, the statutes being regarded as sufficient notice, and section 4858 as sufficient remedy, special burdens by way of special assessments, cannot be laid on property without notice and an opportunity, somewhere along the line, to be heard in opposition or defense.
Special assessments cannot exceed the special benefits. Walsh v. Barron, 61 Ohio St., 15. And if there is nothing else available to the landowner, this question may arise in every case, and therefore the landowner is entitled to notice before any burden by way of special assessment is laid on his property. The rule in such cases is well stated in Stuart v. Palmer, 74 N. Y., 183, as follows: “A law imposing an assessment for a local improvement, without notice to, and a hearing or an opportunity to be heard, on the part of the owner of the property to be assessed, has the effect to deprive him of his property without due process of law, and is unconstitutional. The law may prescribe the kind of notice and the mode in which it may be given, but cannot dispense with all notice. It is not enough that the owner may, by chance, have notice, or that he may, as a matter of favor, have a hearing. The law must require notice .and give the right to a hearing.”
It is urged by counsel for defendant in error that the sections in question are enacted under the police .power, and do no more than to require the railroad (company to so use its property as not to injure that of another, and cite Cooley Const. Lim., star page 573. While the general assembly under the police power may restrict and regulate the conduct of persons, and the use of property, within reasonable bounds, it must *293 do so under the limitations of the constitution, and cannot, under the guise of that power, take the private property of one person and bestow it upon another for his private u.se and benefit. Neither cam it lay an extra burden on property without notice to the owner and an opportunity to be heard. The regulation and restriction under the police power in behalf of the public, may be enforced by taxation or assessment, but in behalf of a private individual it can only be enforced by action in a court of competent jurisdiction.
Tt is also urged by counsel for defendants in error, that the accumulation of water along the roadbed is a nuisance, and that the proceedings authorized by said sections are not more than the abatement of such nuisance at the expense of the party creating it, and this seems to have been the view taken by the courts below. Chicago & E. Ry. Co. v. Keith, 12 Circ. Dec.,. 208; 21 C. C. R., 669; Lawton v. Steele, 119 N. Y., 226; 16 Am. St. Rep., 813, is cited and relied upon to support this contention.
The law of nuisance has no application to the subject-matter of these-sections. Nothing is said in them as to nuisances, and there is no declaration in the statute making such accumulation of water a nuisance, and no authority given to abate any such pretended nuisance. The whole object of the statute is to conduct the accumulated water to a proper outlet so as to protect lands contiguous to the railroad, and for the private benefit of the owners of such lands. There is nothing in the statute looking to the protection of the public health, convenience or welfare. So that if the law of nuisance were to be applied to this case, it C'uild not avail, because the nuisance would be to private individuals, and not to the public. Even Lato *294 ton. v. Steele, supra, concedes that a private nuisance cannot be abated by the party inconvenienced without process of law.
In the Lawton v. Steele case the statute declared and made the fish nets a public nuisance and authorized their destruction by any person, and required the game and fish protectors to destroy them. Under that statute the destruction of the nets was upheld as not being a taking of private property for public use without compensation, and also as not being a taking without due process of law. That case was affirmed by the Supreme Court of the United States in 152 U. S., 133, the Court holding that the statute came within the police power, and as to the value of the nets, in effect, applied the maxim of De minimis non curat lew. The exact question has never been passed upon by this Court, but from the general trend of our decisions, and the construction of our constitution, it may well be doubted whether the summary destruction of such nets under such a statute would be upheld by this Court. In Edson v. Crangle, 62 Ohio St., 49, the statute forbade the use of the nets, and provided that nets set or placed contrary to the act should be confiscated, sold, and proceeds placed in the public treasury; and this Court held the seizure of such nets without process of law to be in violation of the constitutional rights of the owners, and compelled the game warden to make compensation. In that statute there was no provision declaring the nets a nuisance, as in the sections under consideration here there is no provision making the accumulated water a nuisance. That which the general assembly has not declared a public nuisance and authorized its summary abatement in the interest of the public, cannot be construed by a court to be such nuisance and *295 liable to be summarily abated without process of law, even in the interest of the public, and certainly not in the interest of private individuals. This is conceded in Lawton v. Steele, supra.
It is also urged that at common law nuisances might be abated, and that our constitution has made no change in this regard. If at common law private property might, be taken for private use, or taken for public use without compensation, or taken or destroyed without due course of law, then our constitution has rendered inoperative the common law in that regard, because under our constitution private property shall ever be held inviolate, and where taken for public use compensation therefor must be first made in money; and every person for an injury done him in his land, goods or person shall have remedy by due course of law. The common law in so far as it conflicts with these provisions of the constitution is inoperative. There is nothing so sacred in the common law, that it should override a constitution or statute. Much of our constitution Avas adopted, and many of our statutes enacted, to get rid of the imperfections and injustice of the common hew.
While therefore said section 3342 is valid as to the duty imposed on such railroad company to construct and keep open ditches as therein provided Avhere the accumulation of such water is to the injury of contiguous lands, or detrimental to the public, it is invalid when such Avater is not injurious to such lands, or the public, because if no injury is done by such accumulated water, the railroad company can use its right of way for the storage of such water or other purpose as to it may seem proper.
The remedy provided in said sections 3343, 3344, 3345 and 3346 for the enforcement of said duty so im *296 posed by section 3342 is in conflict with section 19 of article 1 of the constitution, and section 16 of the same article, because the private property of the railroad company, the money to jiay the assessment, is. taken, not for a public, but private purpose, and thereby the constitutional right of the company to hold its. private property inviolate is invaded; and this is done without due course of law, because done without notice and an opportunity to be heard in defense, and because further that the right of the owner of contiguous lands for redress against the company for failure to construct and keep open such ditches, is a private right to be enforced by proper action in a court of competent jurisdiction, and not by the paternal remedy of assessment and taxation for the protection and benefit of private persons. The power of assessment and taxation can be enforced by the state in the interest of the public only, and not for the redress of private wrongs.
The judgments of the courts lielow will be reversed,, the demurrer to the petition overruled, and the cause remanded to the court of common pleas for further proceeding^ according to law.

Judgments reversed and cause remanded..

Spear, Davis, Shauck and Crew, JJ., concur.
Price, J., not sitting.