In the Matter of J. RICHARD SELIGMAN, Petitioner, *v.* FRANK WALKLEY, as Commissioner of Agriculture and Markets, Respondent.

Third Department, May 3, 1973.

*Woods, Oviatt, Gilman, Sturman & Clarke (Robert M. Schantz* of counsel), for petitioner.

*Thomas G. Conway* for respondent.

GREENBLOTT, J. This is a proceeding pursuant to CPLR article 78 (transferred to the Appellate Division of the Supreme Court in the Third Judicial Department by order of the Supreme

Court at Special Term, entered in Albany County) to review a determination of the Commissioner of the Department of Agriculture and Markets which disallowed petitioner's claim for damages to his potato crop under section 165 of the Agriculture and Markets Law.

Petitioner is a potato farmer in Steuben County, growing potatoes primarily for the potato chip industry. In 1967 his crop was discovered to be infested with golden nematode disease. On December 7, 1967 a quarantine was imposed by respondent, which prohibited the movement of petitioner's crop except pursuant to procedures and conditions imposed by respondent. Movement of petitioner's crop in interstate commerce was subject to the jurisdiction of the United States Department of Agriculture (U. S. Code, tit. 7, § 150–150dd). The bulk of petitioner's business was with Frito-Lay, Inc., at Chamblee, Georgia. After the quarantine was imposed, notice was given to other States, and a shipment to the Chamblee plant was permitted upon the condition that the potatoes first be washed. Upon arrival, the shipment was rejected because a mold had developed, which was attributed to the washing and transporting of the potatoes while wet. Petitioner was subsequently able to dispose of only a small portion of his crop to other buyers, and the remainder was eventually buried. Claiming that his crop was rendered unmarketable as a result of respondent's quarantine order, and in the case of the Chamblee shipment by the washing requirement, petitioner submitted this claim in the amount of $78,750 for the value of his lost crop.

The claim was originally rejected upon the ground that section 165 had been superseded by chapter 663 of the Laws of 1947 and that the claim was not cognizable under the latter provision. On appeal, we reversed and remanded for further proceedings, holding that the two statutes were not mutually exclusive (*Matter of Seligman* v. *Wickham*, 33 A D 2d 840, affd. 27 N Y 2d 993). After lengthy hearings, the claim was disallowed in its entirety upon the report of the hearing officer, who found that the respondent had acted in a reasonable manner, had neither failed to do anything required by law nor exceeded his authority, and that petitioner's loss was solely a result of the infestation.

Petitioner advances a number of contentions in urging reversal of the determination. His main argument is that the quarantine and attendant publicity rendered his crop unmarketable. He also appears to argue that the respondent abused his discretion in failing to order the destruction of his crop, for which

he contends he would have been entitled to compensation. We disagree with both of these contentions.

Article 14 of the Agriculture and Markets Law does not require destruction of an infested crop. Under subdivision 2 of section 164, infested crops are declared to be public nuisances which "*may* be destroyed or ordered destroyed by the commissioner." Under subdivision 3, the Commissioner "*may* order" the owner of such crops "to take such measures to eradicate or control the said infestation or infection as the commissioner *may* deem necessary or proper." (Emphasis added.) The foregoing language clearly establishes that destruction is not mandated; but by authorizing measures to "control the said infestation", the statute indicates that preservation of salvageable crops should be sought where possible. The primary object of the section is to classify infested crops as nuisances. Insofar as destruction or other remedial action is authorized, however, the statute does nothing more than codify the common-law right of the sovereign to abate a public nuisance, for which the owner is not entitled to compensation.

The language of section 165 can only be considered in light of the same well-established rules of the common law. That provision states that "no damages shall be awarded for the destruction of infested * * * plants * * * or other material under the provisions of [article 14]" to a person "deeming himself aggrieved", except as thereafter provided. What follows is a statement of the procedure to be followed in submitting a claim. No substantive rights are thereby created, nor is there anything in any other provision of article 14 which sets forth the circumstances in which compensation is to be paid. It must, therefore, be held that section 165 merely sets forth the procedure to be followed in submitting a claim for damages where the right to damages exists at common law. Stated most briefly, the common law authorizes damages where the public authority goes beyond those measures which are absolutely necessary for abatement of the nuisance (see *Lawton* v. *Steele*, 119 N. Y. 226, 240; 42 N. Y. Jur., Nuisances, § 47).

Here, the evidence clearly establishes that the measures taken were not excessive. The initial quarantine was the least that could be done to restrain the spread of the infestation, pending other controls; the fact that Frito-Lay originally was agreeable to purchasing petitioner's potatoes, changing its decision only when a mold developed, as well as the fact that some potatoes were eventually sold to others, is a sufficient basis for the finding that the quarantine did not destroy the marketability

of petitioner's crop and also supports the finding that actual physical destruction of the crop would have been unreasonable.

Petitioner's contention that the washing of the potatoes shipped interstate to Chamblee, Georgia, caused the destruction of that shipment, thereby rendering respondent liable therefor, is also without merit, since that requirement was imposed by the United States Department of Agriculture.

The determination should be confirmed, without costs, and the claim dismissed.

HERLIHY, P. J., COOKE, KANE and MAIN, JJ., concur.

Determination confirmed, without costs, and claim dismissed.